1997 ND 33

**Stuart HUESERS, Plaintiff and Appellee,**

v.

**Marla HUESERS, Defendant and Appellant.**

**Civil No. 960218.**

Supreme Court of North Dakota.

Feb. 27, 1997.

Austin G. Engel, Webster & Engel Law Firm, Bismarck, for Plaintiff and Appellee.

Richard R. LeMay, Legal Assistance of North Dakota, Minot, for Defendant and Appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Marla Huesers appealed from the trial court's judgment granting Stuart Huesers custody of their three children. Marla contends the trial court did not properly consider evidence of domestic violence. We reverse and remand.

[¶ 2] Marla and Stuart Huesers were married in July of 1988. The couple had three children: Misty, age 9; Charles, age 6; and, Zachary, age 5. Stuart and Marla separated in 1994 and Stuart brought an action for separation from bed and board. Following a period of separation and reconciliation, Stuart moved to amend the original complaint and filed for divorce. Throughout the proceedings involved in this case, there were allegations and admissions of domestic violence. The trial court found both parties were "quick to anger" and often "engage[d] in physical violence." There was evidence that both parties committed domestic violence during the course of the marriage, but they did not direct this violence toward the children. There were eleven instances of domestic violence the trial court found to be "roughly proportional." These instances began with arguments which escalated to physical abuse by both parties, with Marla hitting

Stuart and Stuart, in turn, sitting on Marla to restrain her.

[¶ 3] Further evidence was presented of three instances of domestic violence committed by Stuart alone. The first of these incidents occurred in Wisconsin. Marla had returned home from a bar and told Stuart how the men in the bar were "hitting on her." Stuart became angry, grabbed her by the throat, and threw her in the bedroom. Marla called the police and Stuart spent a night in jail, but Marla later dropped all the charges. The second incident occurred in Portland, Oregon. Stuart alleged Marla had taken their son Charlie with her when she went skinny-dipping with another man. When she returned home, Stuart hit Marla in the face. The third incident occurred at the farm outside Garrison, North Dakota, after Marla returned home from town. Following an argument, Marla said she was going back to Garrison where she "was appreciated." In response, Stuart pushed her out the door. Stuart admitted to each of these acts.

[¶ 4] In addition to these three instances, Marla also alleged Stuart committed other acts of domestic violence. She claimed Stuart pushed her down to the ground in front of a Garrison bar, and, on another occasion, threw her across their garage. The most recent act of domestic violence, Marla alleged, occurred in Bismarck when Stuart hit her in the mouth following an argument on Misty's birthday. Stuart disputes Marla's description of these events and denies he committed domestic violence on these occasions.

[¶ 5] The trial court placed sole physical custody with Stuart, finding his "past and present life style is preferable to that of Marla." Marla challenges the trial court's findings of fact, stating it did not properly consider the evidence of domestic violence when determining custody.

[¶ 6] A trial court's custody determination is a finding of fact and will not be set aside unless clearly erroneous. *Ternes v. Ternes,* 555 N.W.2d 355, 357 (N.D.1996); *Krank v. Krank,* 529 N.W.2d 844, 847 (N.D. 1995). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, has a definite and firm conviction that the trial court has made a mistake. *Krank,* 529 N.W.2d at 847 (citing *Ludwig v. Burchill,* 514 N.W.2d 674, 675 (N.D.1994)).

[¶ 7] In determining custody, a trial court must determine what is in the best interests of the child. N.D.C.C. § 14–09–06.2. When there is evidence of domestic violence, it creates a rebuttable presumption against awarding custody to the perpetrator of the domestic violence.[1] *Heck v. Reed,* 529 N.W.2d 155, 161 (N.D.1995). This presumption can be rebutted only by clear and convincing evidence to the contrary. *Id.* Domestic violence is defined to include, "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." N.D.C.C. § 14–07.1–01(2). Although domestic violence is just one of thirteen factors a trial court must review when determining the best interest of a child, "in the hierarchy of factors to be considered, domestic violence predominates when there is credible evidence of it." *Ryan v. Flemming,* 533 N.W.2d 920, 923 (N.D.1995).

---

**1.** Section 14–09–06.2(1)(j) states, in relevant part,

"j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence.... The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, 'domestic violence' means domestic violence as defined in section 14–07.1–01."

[¶ 8] We have considered several cases on the issue of domestic violence under the current statute. *Ternes*, 555 N.W.2d 355; *Anderson v. Hensrud*, 548 N.W.2d 410 (N.D.1996); *Engh v. Jensen*, 547 N.W.2d 922 (N.D.1996); *Bruner v. Hager*, 534 N.W.2d 825 (N.D.1995); *Helbling v. Helbling*, 532 N.W.2d 650 (N.D.1995); *Krank*, 529 N.W.2d 844. We are again asked to determine which parent bears the burden of rebutting the statutory presumption when there is evidence both parents were guilty of domestic violence. The statute does not speak directly to this issue, but in *Krank*, we stated,

"if domestic violence has been committed by both parents, the trial court [must] measure the amount and extent of domestic violence inflicted by both parents. If the amount and extent of domestic violence inflicted by one parent is *significantly greater* than that inflicted by the other, the statutory presumption against awarding custody to the perpetrator will apply only to the parent who has inflicted the greater domestic violence...."

529 N.W.2d at 850 (emphasis added). When the evidence shows an equal amount of domestic violence on the part of both parents, the presumption should apply to neither party. *Id.*

[¶ 9] The trial court measured the domestic violence which occurred during the course of the Huesers' marriage, and then determined if there were enough instances of domestic violence on one side to apply the statutory presumption. It found the violence committed by Stuart was greater than the violence committed by Marla, but was not "significantly greater" as to require the presumption to apply. The trial court stated, "[t]here are at least eleven other incidents of violence during the marriage which would begin with arguments, rise to contact where Marla would attack Stuart and he would sit on her until she calmed down. These incidents are somewhat equal in severity...."

[¶ 10] The trial court recognized Stuart's admission of the three instances where he was the sole perpetrator of domestic violence. It found these instances demonstrated Stuart committed more domestic violence, but the trial court did not apply the statutory presumption against him. The trial court concluded these instances were provoked by Marla's actions and should not be weighed against Stuart. The trial court stated, "Stuart committed domestic violence against Marla on three occasions in which she did not commit domestic violence, after actions by Marla that would have made most reasonable persons commit domestic violence. * * * [T]here is sufficient evidence to mitigate Stuart's actions...." In its findings, the trial court did not make further reference to the other instances of domestic violence alleged by Marla. The other factors of section 14–09–06.2 were considered, and the trial court awarded custody to Stuart.

[¶ 11] Because of its rationalization for Stuart's acts of physical violence, we cannot affirm the trial court's custody determination. Although the trial court did make findings as to the domestic violence which occurred, it excused the three instances of domestic violence Stuart perpetrated because it found these incidents were provoked by Marla's actions. Domestic violence is only mitigated when it is committed in self defense. N.D.C.C. § 14–07.1–01(2). Domestic violence which is provoked by "button pushing" is not acceptable and cannot be weighed against the perpetrator. *Anderson v. Hensrud*, 548 N.W.2d at 413–414; *Engh v. Jensen*, 547 N.W.2d at 926; *Heck*, 529 N.W.2d at 164 (citation omitted). Domestic violence must be weighed against the perpetrator and custody cannot be granted to the perpetrator unless he or she can rebut the allegations by clear and convincing evidence, as the statute requires. A trial court cannot dismiss violent behavior merely because the behavior was instigated by nonviolent behavior. Although we do not condone Marla's actions, these actions do not operate to mitigate or excuse Stuart's acts of domestic violence.

[¶ 12] Because the trial court did not use the proper standard in measuring Stuart's acts of domestic violence, we reverse and remand for the trial court to measure the acts of violence without the mitigation applied by the trial court.

[¶ 13] MESCHKE, NEUMANN and MARING, JJ., concur.

MARING, Justice, concurring.

[¶ 14] I concur in the majority opinion, but write specially to emphasize a judge's duty to perform his judicial duties impartially and unbiased.

[¶ 15] The trial judge prepared a memorandum opinion and ultimately signed findings of fact which indicate he believed that provocation by nonviolent actions mitigated the committal of domestic violence. The trial judge stated in his memorandum opinion:

> Applying the doctrines in *Krank* to this case, the Court finds that domestic violence has been committed by both parents and both parents are fit. Stuart admits to three incidents. The Court finds those to have happened and there is some mitigation on his part as they were committed after actions by Marla that would have made most reasonable persons commit domestic violence.

> .    .    .    .    .

> ... As to the three incidents where Stuart committed domestic violence on Marla and she did not commit domestic violence on him, the Court believes the record in this case contains sufficient evidence that would mitigate Stuart's actions. The court does not mean to send a message that somehow the person who strikes first should be held blameless. However, if one looks at the actions of Marla prior to Stuart striking her in those three incidents, there are probably few people who would not have an anger that would not rise to violence. Perhaps if this case is appealed that issue can be explored. One would hope that a women would not be able to totally foreclose her husband's chance at custody by leaving her two year old son in a pickup while she skinny dips with another man and then comes home and taunts her husband with these facts. The court finds the domestic violence to be roughly proportional and the domestic violence factor ceases to exist.

Two of the court's findings of fact incorporate the above portions of the memorandum opinion:

> X

> Stuart committed domestic violence against Marla on three occasions in which she did not commit domestic violence, after actions by Marla that would have made most reasonable persons commit domestic violence.

> .    .    .    .    .

> XIV

> In the three incidents where Stuart committed domestic violence on Marla and she did not commit domestic violence on him, there is sufficient evidence to mitigate Stuart's actions. In one incident, Marla left her two year old son in a pickup truck while she went skinny dipping with another man and then came home and taunted her husband with these facts.

[¶ 16] While the trial judge does indicate in his memorandum opinion, "Perhaps if this case is appealed that issue [mitigation] can be explored," it is difficult to understand any basis for a question as to the law of this state. As noted in the majority opinion, "[d]omestic violence is only mitigated when it is committed in self-defense. N.D.C.C. § 14–07.1–01(2)." This court has addressed domestic violence in the context of custody on a number of occasions, and pointed out domestic violence which is provoked by "button pushing" is not acceptable. *Anderson v. Hensrud,* 548 N.W.2d 410, 413–14 (N.D. 1996); *Engh v. Jensen,* 547 N.W.2d 922, 925 (N.D.1996); *Heck v. Reed,* 529 N.W.2d 155, 164 (N.D.1995). In fact in *Heck,* we stated N.D.C.C. § 14–09–06.2(1)(j) is intended to counteract myths concerning domestic violence, one of which is that "victims provoke or deserve the violence," (citation omitted). *Heck* at 164. We further stated:

> Domestic violence is not caused by stress in the perpetrator's life, alcohol consumption, or a particular victim's propensity to push a perpetrator's buttons (citation omitted). Rather, domestic violence is a learned pattern of behavior aimed at gaining a victim's compliance (citation omitted).

*Heck* at 164–65.

[¶ 17] Canon 3 of the Code of Judicial Conduct states:

## B. Adjudicative Responsibilities.

. . . . .

(2) A judge shall be faithful to the law and maintain professional competence in it. . . .

. . . . .

(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so.

The purpose of Canon 3 is clear. A judge must perform his duties in an impartial and unbiased manner. Unfortunately, the trial judge's statements in his memorandum opinion and his findings of fact, X and XIV, raise an appearance of gender bias whether intended or not. The language utilized by the trial judge can be construed to say that a husband is "justified" in committing domestic violence against a wife who "taunts" him she has been with other men. The Commentary to Canon 3(B)(5), N.D.C.J.C. states: "A judge must perform judicial duties impartially and fairly. A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute." The final report of the North Dakota Commission on Gender Fairness in the Courts dated October 10, 1996, sums up our responsibility: "Equity and justice are the fundamental goals of our court system." The North Dakota Commission on Gender Fairness, *A Difference in Perceptions: The Final Report of the North Dakota Commission on Gender Fairness in the Courts,* October 10, 1996, at 127. The Commission on Gender Fairness points out, "While it is not possible to develop empirical data about possible bias in contemporary considerations of extramarital conduct, it is undisputed that historically the sexual conduct of women parents was judged more harshly than that of men parents." *Id.* at 62. The judiciary must be dedicated to the elimination of gender bias from our courts. *See Vitko v. Vitko,* 524 N.W.2d 102, 105 (N.D.1994)(Justice Levine's concurring opinion discussing the judiciary's responsibilities under Canon 3(B)(6), N.D.C.J.C.); *Johnson v. Johnson,* 544 N.W.2d 519, 522 (N.D.1996)(noting it is "reprehensible and unacceptable" to permit the suggestion in the record that physical violence would have been appropriate against Sybil Johnson).

[¶ 18] The trial court's custody determination was induced by an erroneous view of the law. I would reverse the custody award and remand it to the trial court to determine whether Stuart overcame the statutory presumption which arises against him based on the trial court's finding of fact that Stuart's violence was greater. I would direct the trial court to redetermine custody from that point in this case.

[¶ 19] MARING and MESCHKE, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 20] Domestic violence is unacceptable. "Clearly . . . the victim's 'pushing the buttons' of the perpetrator does not justify or excuse domestic violence." *Anderson v. Hensrud,* 548 N.W.2d 410, 414 (N.D.1996) (Sandstrom, J., concurring specially).

[¶ 21] In this case, both parents have engaged in substantial domestic violence. Both have been the initiator of violence. Recognizing the serious problem with both parents, the district court decided custody based on the best interests of the children, evaluating all the factors of the statute, N.D.C.C. § 14-09-06.2(1).

[¶ 22] The majority says the violence of the marriage should be scored like a boxing match and the children should go to the parent scoring the fewest points (unless there is a virtual tie). Instead of following the district court and asking what is in the best interests of the children, the majority says the district court wrongly scored the boxing match.