1998 ND 54

**Stuart HUESERS, Plaintiff and Appellant,**

v.

**Marla HUESERS, Defendant and Appellee.**

**Civil No. 970348.**

Supreme Court of North Dakota.

March 5, 1998.

Rehearing Denied March 30, 1998.

Austin G. Engel (argued), of Webster & Engel, Bismarck, and Greg W. Hennessy (no appearance), of Hennessy Law Office, P.C., Williston, for plaintiff and appellant.

Richard R. LeMay (argued), of Legal Assistance of North Dakota, Minot, for defendant and appellee.

MESCHKE, Justice.

[¶ 1] Stuart Huesers appealed an amended decree placing custody of his children with their mother, Marla Huesers. We hold the trial court should have considered the 1997 legislative amendments to NDCC 14–09–06.2(1)(j) but, under the amendments, Stuart's conduct, as a matter of law, constituted a pattern of domestic violence within a reasonable time proximate to the litigation. Thus, the court's error was harmless, and we affirm.

[¶ 2] Stuart and Marla Huesers married in 1988 and had three children. Stuart filed for separation from bed and board in November 1994, and in October 1995 filed an amended complaint for divorce. After a hearing, the trial court dissolved the marriage and placed custody of the children with Stuart. Marla appealed, claiming the court did not properly consider evidence of domestic violence.

[¶ 3] In *Huesers v. Huesers*, 1997 ND 33, ¶¶ 2, 3, 10–12, 560 N.W.2d 219, [*Huesers I* ] we reversed and, after explaining the trial court's error in dealing with domestic violence, remanded for a redetermination of custody:

> The trial court found both parties were "quick to anger" and often "engage[d] in physical violence." There was evidence that both parties committed domestic violence during the course of the marriage, but they did not direct this violence toward the children. There were eleven instances of domestic violence the trial court found to be "roughly proportional." . . .
>
> Further evidence was presented of three instances of domestic violence committed by Stuart alone.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> The trial court stated, "Stuart committed domestic violence against Marla on three occasions in which she did not commit domestic violence, after actions by Marla that would have made most reasonable persons commit domestic violence. &ast; &ast; &ast; [T]here is sufficient evidence to mitigate Stuart's actions. . . ."
>
> Because of its rationalization for Stuart's acts of physical violence, we cannot affirm the trial court's custody determination. Although the trial court did make findings as to the domestic violence which occurred, it excused the three instances of domestic violence Stuart perpetrated because it found these incidents were provoked by Marla's actions. Domestic violence is only mitigated when it is committed in self defense. . . .
>
> Because the trial court did not use the proper standard in measuring Stuart's acts of domestic violence, we reverse and remand for the trial court to measure the acts of violence without the mitigation applied by the trial court.

[¶ 4] After our remand, the trial court reconsidered custody and filed a memorandum opinion on May 30, 1997. The court was aware the 1997 Legislature had passed Senate Bill 2235 as an emergency measure, effective April 3, 1997, clarifying the domestic violence presumption against custody, but the court refused to consider it:

> The Court does not believe that SB 2235 has retroactive application. The remand is to measure the acts of violence without the mitigation the trial court applied earlier. It was the mitigation that allowed the Court to grant custody to Stuart in the first place. Now that that cannot be considered, the Court has no alternative but to award custody to Marla. Based on the majority opinion the Court must find that there is a presumption that Stuart should not have custody of the children due to his failure to rebut the domestic violence presumption. Marla is granted sole legal custody of all the children and Stuart is granted child visitation.

[¶ 5] After the court issued its memorandum opinion, but before making formal findings, Stuart's counsel moved the court to reconsider its refusal to use the new statutory language. In support, Stuart cited our opinion in *Dinius v. Dinius*, 1997 ND 115, ¶¶ 13, 17–18, 564 N.W.2d 300, issued June 3, 1997:

> Under N.D.C.C. § 14–09–06.2(1)(j), there is a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded custody of the children: . . .
>
> &ast; &ast; &ast; &ast; &ast; &ast;

In 1997, the legislature amended N.D.C.C. § 14–09–06.2(1)(j). N.D.Sess. Laws ch. 147, § 2 (1997). Although the amended statute did not take effect until April 3, 1997, after the district court's custody decision, it contains a clear instruction to help us determine North Dakota law concerning domestic violence.... In order to help us determine whether the alleged use of force might constitute domestic violence, we will examine the conduct in light of the recent amendment.

Under the amendment, the rebuttable presumption against the parent who has committed domestic violence continues to exist. However, the legislature clarified the degree of domestic violence required to invoke the presumption. The amended statutes requires *"one incident of domestic violence which resulted in serious bodily injury* or involved the use of a dangerous weapon or ... *a pattern of domestic violence within a reasonable time proximate to the proceeding."*

(Emphasis in original.) The trial court denied the motion to reconsider and amended the decree to place custody of the children with Marla.

[¶ 6] On appeal, Stuart asserts the trial court erred in refusing to consider the clarifying statutory language. We agree.

[¶ 7] A statute is not retroactive unless it is expressly declared to be so. NDCC 1–02–10. When, however, a newly enacted statute contains a clear sense of direction by the Legislature, the courts should not ignore that direction in determining what legal concept or principle of law to apply. *Lord v. Job Service North Dakota,* 343 N.W.2d 92, 94 n. 1 (N.D.1984). In *Dinius,* 1997 ND 115, ¶¶ 16, 18, 564 N.W.2d 300, we explained the Legislature has "given us recent help in understanding the meaning of domestic violence for purposes of N.D.C.C. § 14–09–06.2(1)(j)," by enacting the 1997 amendments that "clarified the degree of domestic violence required to invoke the presumption" against awarding custody to a parent who has committed domestic violence. And, we explained it was proper to consider this clarifying language as a guide to determine whether pre-amendment conduct was domestic violence invoking the presumption. We conclude the trial court erred when it refused to consider the effect of the 1997 amendment on the domestic violence presumption, after this Court in *Dinius* had already announced the guiding effect of the newly-enacted legislation.

[¶ 8] As amended, NDCC 14–09–06.2(1)(j) creates a rebuttable presumption only if "there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding." The evidence here did not suggest Stuart and Marla's violence resulted in serious bodily injury or the use of a dangerous weapon. Rather, the evidence showed eleven instances of proportional violence by Stuart and Marla and three additional instances of violence by Stuart alone.

[¶ 9] When domestic violence has been committed by both parties, the court must measure the amount and extent of domestic violence inflicted by both. *Krank v. Krank,* 529 N.W.2d 844, 850 (N.D.1995). If one parent inflicts significantly greater domestic violence than the other, the presumption against custody applies only to the parent inflicting the greater violence. *Id.* When there is equal violence by both parents, the presumption does not apply. *Id.* The amended language makes no change to this required proportional analysis when both parents have committed domestic violence. The court must determine which parent has committed the greater pattern of violence at times reasonably close to the divorce action. From the three incidents when Stuart alone physically abused Marla and she was not violent, the trial court found greater violence committed by Stuart. As we emphasized in *Huesers,* 1997 ND 33, ¶ 11, 560 N.W.2d at 222, unilateral acts of domestic violence are mitigated only when committed in self-defense, and nonviolent conduct of the victim cannot mitigate the perpetrator's violence. Thus, the dispositive question under the amended statute is whether Stuart's greater violence constituted a pattern of domestic violence occurring within a reasonable time proximate to the litigation. We conclude, as a matter of law, it did.

[¶ 10] Words used in a statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. NDCC 1-02-02; *Kinney Shoe Corp. v. State*, 552 N.W.2d 788, 790 (N.D.1996). Black's Law Dictionary 1127 (6th ed.1990), defines pattern as, "[a] reliable sample of traits, acts or other observable features characterizing an individual." The trial court found Stuart and Marla engaged in "at least eleven ... incidents of violence" that were "somewhat equal in severity" between them. But the court found Stuart committed greater violence, including three incidents of violence when Marla was not. These violent incidents occurred throughout the marriage, and Stuart concedes he used "aggressive force against Marla" in September 1994, only two months before he filed for separation. Factual questions where reasonable persons cannot disagree become questions of law for the court to decide. *See Diegel v. City of West Fargo*, 546 N.W.2d 367, 373 (N.D.1996); *Industrial Commission of North Dakota v. McKenzie County Nat'l Bank*, 518 N.W.2d 174, 178 (N.D.1994). We conclude, as a matter of law, Stuart's repeated acts of greater domestic violence, including some that occurred within months before this divorce began, constituted a pattern of domestic violence within a reasonable time before the divorce action. That pattern raised the statutory presumption against custody by Stuart.

[¶ 11] Error not affecting substantial rights of the parties must be disregarded. N.D.R.Civ.P. 61. Nonprejudicial mistakes by the trial court constitute harmless error and are not grounds for reversal. For examples, *see Fronk v. Meager*, 417 N.W.2d 807, 812 (N.D.1987); *Shark v. Thompson*, 373 N.W.2d 859, 865 (N.D.1985). Because Stuart, as a matter of law, committed a pattern of domestic violence leading up to the divorce action, we conclude the trial court's failure to consider the amendment harmless error, resulting in no prejudice to Stuart. We, therefore, affirm the amended judgment placing custody of the minor children with Marla.

[¶ 12] VANDE WALLE, C.J., and MARING and NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 13] Because I would have affirmed in *Huesers I*, I dissent here. *See Huesers v. Huesers*, 1997 ND 33, 560 N.W.2d 219 (Sandstrom, J., dissenting).

[¶ 14] Dale V. Sandstrom.