1998 ND 68

Desiree Ann KASPROWICZ, n/k/a
Desiree Ann Peterson, Plaintiff,
Appellee and Cross–Appellant,

v.

Darin Edward KASPROWICZ, Defendant,
Appellant and Cross–Appellee.

Civil No. 970229.

Supreme Court of North Dakota.

March 30, 1998.

J. Philip Johnson, Wold Johnson, P.C., Fargo, and Mark J. Butz, Rugby, for plaintiff, appellee and cross-appellant. Submitted on briefs.

Jeff L. Nehring, Neff Cresap Rathert Eiken & Irigoin, P.C., Williston, for defendant, appellant and cross-appellee. Submitted on briefs.

VANDE WALLE, Chief Justice.

[¶ 1] Darin Edward Kasprowicz and Desiree Ann Kasprowicz (now known as Peterson) individually appealed from the Judgment of the Ward County District Court awarding both of them "joint custody" of their child, Jakob. The "joint custody" involves rotating physical custody from one parent to the other on one-month intervals. Because we cannot determine whether the trial court considered Jakob's best interests in awarding custody, we reverse and remand

for the district court to consider the best interest of Jakob.

## I

[¶ 2] Darin and Desiree Kasprowicz's son, Jakob, was born on December 23, 1994. Darin and Desiree were granted a divorce as part of a Final Judgment of Divorce and Interim Judgment Order issued on February 1, 1996, after which the district court determined the highly contentious issue of the custody of Jakob.

[¶ 3] Both Darin and Desiree claimed to be the victims of domestic violence. The district court found Desiree's allegations of domestic violence were uncorroborated and concluded no acts of domestic violence could be attributable to Darin. The court did, however, find that Desiree hit Darin on a number of occasions.

[¶ 4] Along with the allegations of domestic abuse on the part of the couple, Desiree's unmarried cohabitant, Albert Libke, exhibited violence toward Darin. Libke admits to badgering Darin with vulgar and threatening language and gestures. Libke does not deny an incident where he propelled his car toward Darin's car. An eight-mile, high-speed chase ensued, involving Darin and Jakob. Libke admitted Darin has never done anything to provoke these attacks.

[¶ 5] Desiree acknowledged Libke's behavior was affecting Jakob and had to stop. The district court noted the evidence of domestic violence by Libke was a critical factor in determining the custody of Jakob. The court concluded Libke exhibited "domestic violence behavior under the law." Desiree's rotation in the custody of Jakob was conditioned on Libke not being present in the home.

[¶ 6] Darin and his parents were alleged to have abducted Jakob for nine days in violation of a Temporary Custody Order. The abduction included a high-speed trip from Desiree's home with Jakob in the vehicle. The charges were dropped because of uncertainty over the structure of the temporary custody arrangement.

[¶ 7] At the trial on the custody phase, Dr. Stephen Podrygula, a clinical psychologist, presented his Child Custody Evaluation. In his evaluation, Dr. Podrygula noted "full-scale 'tribal warfare' " was underway with Darin and Desiree enlisting the support of family members and friends in their struggle against the other party.[1] Dr. Podrygula cautioned, "[i]f Desiree and Darin are really concerned about their son's welfare, it is absolutely essential that they try to reduce their level of conflict."

[¶ 8] To add to the contentious atmosphere, before the district court rendered its decision, Darin Kasprowicz apparently distributed flyers in the Minot area. The flyers were critical of a perceived delay in court action on the custody matter. The court received a copy of the flyer before it issued its letter decision but purposely set the flyer aside until after the letter decision was sent to all of the parties on March 5, 1997.

[¶ 9] Despite what it viewed as a "very real and yet veiled" threat from Darin Kasprowicz in the flyers, the district court issued its Findings of Fact, Conclusions of Law, and Order for Judgment on May 15, 1997. In its Order, the district court set up a "joint custody" arrangement, whereby Desiree and Darin shared physical custody of Jakob on a rotating one-month basis. Jakob was to be exchanged at a certain time each month in a transfer supervised by the McHenry County Sheriff's office. Desiree's physical custody of Jakob was conditioned on Albert Libke not being present in her home.

## II

[¶ 10] On appeal, Darin Kasprowicz claims the district court erred in awarding partial custody to Desiree because the district court found her to be a perpetrator of domestic violence. Desiree Kasprowicz claims the court erroneously ignored her allegations of domestic abuse. We reverse because of the trial court's findings on domestic violence and because it is unclear whether or not the

---

1. The record contains unfortunate examples of ex parte communications from both sets of grandparents, which include crude comments and superfluous tips as to how and when the court should rule. These communications are not only contrary to judicial procedure, Cannon 3(B)(7), N.D.Code of Jud. Conduct, but are detrimental to the parties.

district court based its custody decision on the best interests of Jakob.

[¶ 11] This court will not disturb a child custody determination unless it is clearly erroneous. *Huesers v. Huesers,* 1997 ND 33, ¶ 6, 560 N.W.2d 219 [*Huesers I* ]; N.D. R. Civ. P. 52(a). A finding of fact is clearly erroneous if it is not supported by the evidence, if it is induced by an erroneous view of the law, or if the court is left with the definite and firm conviction that a mistake has been made. *Huesers I,* 1997 ND 33, ¶¶ 6, 12, 560 N.W.2d 219 (reversing because district court did not use proper standard in measuring husband's acts of domestic violence); N.D. R. Civ. P. 52(a).

[¶ 12] It is unclear from the Findings of Fact, Conclusions of Law and Order for Judgment what conclusion the district court reached regarding the domestic violence presumption. In its Findings of Fact, the court recited the various allegations of domestic violence by Darin and Desiree. The court examined the allegations by looking to corroborating evidence. Corroboration may make allegations of domestic violence more credible. But corroboration is not required as a matter of law to prove domestic violence under section 14–09–06.2(1)(j), N.D.C.C. *Cf. State v. Oasheim,* 353 N.W.2d 291, 294 (N.D.1984) (stating corroboration is not required of a rape victim's testimony). *Compare* N.D.C.C. § 29–21–14 (requiring corroboration for conviction on testimony of accomplice). While the district court should judge the credibility of domestic violence allegations, corroboration cannot be the sole determinant of credibility. Domestic disputes are by their very nature intra-family disputes, often unseen by outsiders and unverifiable but for the word of the victim. Requiring corroboration of domestic violence allegations as a matter of law diminishes the protection for children envisioned in section 14–09–06.2(1)(j), N.D.C.C.

[¶ 13] However, we reverse in this case because of the court's lack of a conclusion as to the effect of these allegations on the domestic violence presumption. The court identified the domestic violence by Desiree's live-in boyfriend, Albert Libke, as a "critical factor" in its custody determination. Despite the "critical" importance of Libke's domestic violence, the court awarded Desiree partial custody of Jakob in a month-to-month transfer of custody although ordering Libke not be present in the home during the partial custody. Hypothetically, if the presumption does not arise against Desiree, and if all other factors in section 14–09–06.2(1), N.D.C.C., are equal, the domestic violence perpetrated by Desiree's live-in boyfriend should favor physical custody being placed with Darin. *Anderson v. Hensrud,* 548 N.W.2d 410, 413 (N.D.1996) (noting "family or household member" in section 14–09–06.2(1)(j) includes "*any* member of a household or family"). But in this case, rotating physical custody was awarded, which implies other issues not identified in the district court's decision were determinative.

[¶ 14] The district court's decision cannot be justified by the outmoded view of favoring the mother in custody decisions. That would be plainly contrary to North Dakota law. N.D.C.C. § 14–09–06 (stating father and mother have equal rights with regard to the care, custody, education, and control of the children of the marriage). Despite this clear position in our law, Desiree's brief makes the remarkable statement:

> "Whatever may be the political arguments with respect to equal opportunity and whatever may be the present day notions of political correctness, the entire evolution of human biology and the record of human history to date, supports the concept that the natural mother should be the primary custodian of a small child, unless there are extraordinary circumstances."

We reject this outmoded and discredited argument. A father has as much right to raise a child as a mother if he is fit. *See* N.D.C.C. § 14–09–06; *Leppert v. Leppert,* 519 N.W.2d 287 (N.D.1994). *Compare* N.D.C.C. § 30–10–06 (repealed 1973, giving preference to mother where child was of "tender years"); *Gress v. Gress,* 148 N.W.2d 166, 167 (N.D. 1967) (holding in syllabus by the court, that "[a]ll things being equal, preference is to be given to the mother in awarding custody of a child of tender years"). Despite Desiree's perception of "political correctness" in the law, her position has not been the law in this

State since 1973, and therefore must be viewed as an entreaty to employ a form of gender bias.

[¶ 15] In the present case, the district court ordered "joint custody" which it defined as rotating physical custody on a month-to-month basis. *Compare Dickson v. Dickson,* 1997 ND 167, ¶ 6, 568 N.W.2d 284 (concluding absent a definition provided by the district court "joint legal custody" has no legal significance). While rotating physical custody is not per se erroneous, *DeForest v. DeForest,* 228 N.W.2d 919 (N.D.1975), the district court's findings must support a conclusion that alternating custody is in the best interest of the child. *Kaloupek v. Burfening,* 440 N.W.2d 496, 498 (N.D.1989) (affirming alternating custody where court made finding such an arrangement was in the best interest of the child). We require a factual finding because it is generally not in the child's best interest to be bandied back and forth between parents in a rotating physical custody arrangement. *Id.* at 497. The lack of such a finding in this case, leads us to suspect the month-to-month custody arrangement was the product of a fierce familial fracas, not made in the best interest of Jakob, but which appears to have been made to either punish or reward the parents. While we empathize with the district court's unenviable position in dealing with these two combative families, we cannot endorse a custody arrangement that is apparently not based on the domestic violence presumption but neither does it have the best interest of the child as its core. As a result, we must remand for reconsideration and further findings in light of this opinion.

### III

[¶ 16] On March 5, 1997, the district court in this case sent a letter outlining its decision to all of the parties. On April 2, 1997, the North Dakota Legislature approved an emergency measure amending the domestic violence factor in the Best Interest and Welfare of the Child statute. N.D.C.C. § 14–09–06.2(1)(j); 1997 N.D. Laws Ch. 147, § 2 (amending the language of section 14–09–06.2(1)(j), N.D.C.C.). The amended measure was filed and became effective the next day, on April 3, 1997. On May 15, 1997, after the new amendments became effective, the court in this case issued its Findings of Fact, Conclusions of Law and Order for Judgment.

[¶ 17] Under the prior law, the presumption arose with credible evidence of a single occurrence of domestic violence. *See, e.g., Anderson,* 548 N.W.2d at 413 (quoting *Krank v. Krank,* 529 N.W.2d 844, 850 (N.D.1995) for the proposition that under section 14–09–06.2(1)(j), N.D.C.C., a single act of domestic violence may suffice to invoke the presumption). Under the amended law domestic violence which results in serious bodily injury, involves the use of a dangerous weapon, or is part of a pattern of domestic violence is necessary to give rise to the domestic violence presumption. N.D.C.C. § 14–09–06.2(1)(j).

[¶ 18] We considered allegations of domestic violence in light of the 1997 amendments in *Dinius v. Dinius,* 1997 ND 115, ¶¶ 17–20, 564 N.W.2d 300. In *Huesers v. Huesers,* 1998 ND 54, ¶ 7, 574 N.W.2d 880 [*Huesers II* ], we concluded a district court erred by not considering the effects of the 1997 amendments. Because we reverse and remand this case for further consideration, on remand the trial court is to apply the amended section 14–09–06.2(1)(j), N.D.C.C., if applicable.

[¶ 19] SANDSTROM, NEUMANN, MARING, and MESCHKE, JJ., concur.

