2006 ND 153

**Christopher GIETZEN, Plaintiff and Appellant**

v.

**Jessica GABEL, n/k/a Jessica Bay, Defendant and Appellee.**

**No. 20050268.**

Supreme Court of North Dakota.

July 18, 2006.

Robert A. Keogh, Keogh Law Office, Dickinson, N.D., for plaintiff and appellant.

Robert J. Schultz, Conmy Feste, Ltd., Fargo, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Christopher Gietzen appeals from a judgment awarding Jessica Gabel sole physical custody of their minor child, granting Gietzen visitation, and ordering Gietzen to pay Gabel child support. We conclude the district court failed to correctly apply the law and make necessary findings about domestic violence, and we reverse and remand for further proceedings.

I

[¶ 2] Gietzen and Gabel have never been married, and in 1996, they had a son together. Gietzen and Gabel have had a tumultuous and sporadic relationship. From the date of the child's birth through the summer of 2000, Gietzen and Gabel generally lived together in Bismarck, but there were times when they were separated and the child lived with Gabel. During one period when they were separated, Gabel had a relationship with another man, and she has a child from that relationship. In the summer of 2000, Gietzen and Gabel moved to Fargo and lived together until they ended their relationship in October 2001. According to Gietzen, their relationship ended when Gabel began a relationship with her current husband, David Bay, whom she married in October 2002. According to Gietzen, although his relationship with Gabel ended in October 2001, they continued to have some contact until January 2002, so both he and Gabel could take care of the child while the other worked.

[¶ 3] Gabel claimed Gietzen physically abused her on a regular basis from 1995 until shortly after their relationship ended. Gabel claimed that following an argument in December 2001, Gietzen grabbed her by

the throat, pushed her against a wall, lifted her up in the air, and choked her until she passed out. Gietzen admitted choking Gabel until she passed out, but claimed she had come after him with a knife. In January 2002, Gabel called police and reported Gietzen had been threatening her with a pocket knife. Gietzen claimed he was using the knife to clean his fingernails and no charges were filed. Later in January 2002, while Gabel was on a date with Bay, Gietzen called Gabel several times for a haircut. Gabel eventually agreed to cut Gietzen's hair later that evening, and during the haircut, the parties began arguing and Gabel cut Gietzen in the face, chest, and hand with a scissors. Gietzen was treated for the injuries at the emergency room, and Gabel was initially charged with attempted murder, but subsequently pled guilty to assault.

[¶ 4] After the January 2002, incident with the scissors, Cass County Social Services took custody of the child for a period of time. The child eventually began living with Gietzen, and Gabel had visitation. In the fall of 2003, Gietzen moved with his child to Halliday, and the child attended school in Killdeer. In August 2003, Gietzen sued Gabel to establish paternity, to obtain custody of his child, and to set visitation and establish Gabel's child support obligation. Gietzen obtained an ex parte order granting him temporary custody of his child and granting Gabel's visitation. The child lived with Gietzen and attended school in Killdeer from 2003 through the trial in early 2005. At the trial, both Gietzen and Gabel claimed they were victims of domestic violence. The district court ultimately awarded Gabel physical custody of the child, granted Gietzen visitation, and ordered Gietzen to pay Gabel child support.

## II

[¶ 5] Gietzen argues several of the district court's findings of fact are not supported by the evidence and the court misapplied the law on domestic violence. He claims the court failed to make a finding on whether there was credible evidence of domestic violence and erred in measuring the amount of domestic violence committed by both parties.

[¶ 6] An award of custody is treated as a finding of fact and will not be reversed on appeal unless it is clearly erroneous under N.D.R.Civ.P. 52(a). *Cox v. Cox*, 2000 ND 144, ¶ 9, 613 N.W.2d 516. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Kjelland v. Kjelland*, 2000 ND 86, ¶ 8, 609 N.W.2d 100.

[¶ 7] Under N.D.C.C. § 14–09–06.1, a district court must award custody of a child to the person who will promote the best interests and welfare of the child. *Cox*, 2000 ND 144, ¶ 10, 613 N.W.2d 516. Section 14–09–06.2(1), N.D.C.C., outlines several factors for determining the best interests and welfare of a child. A district court has substantial discretion in a custody decision, but it must consider the relevant custody factors in N.D.C.C. § 14–09–06.2(1)(a)–(m). *Cox*, at ¶ 10. A separate finding is not required for each statutory factor, but the court's findings must be stated with sufficient particularity so we can understand the factual basis for the court's decision. *Id.*

[¶ 8] Section 14–09–06.2(1)(j), N.D.C.C., creates a rebuttable presumption against awarding custody of a child to a perpetrator of domestic violence and provides:

Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evi-

dence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards custody to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.

Section 14–07.1–01(2), N.D.C.C., defines domestic violence to include:

physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

[¶ 9] This Court has said that when there is credible evidence of domestic violence, it is the predominate factor in custody decisions under N.D.C.C. § 14–09–06.2(1). *Thompson v. Olson*, 2006 ND 54, ¶ 10, 711 N.W.2d 226; *Lawrence v. Delkamp*, 2000 ND 214, ¶ 3, 620 N.W.2d 151. A determination whether the presumption under N.D.C.C. § 14–09–06.2(1)(j) is applicable is a finding of fact, which will not be reversed on appeal unless clearly erroneous. *Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 6, 700 N.W.2d 711. When a district court addresses whether evidence of domestic violence triggers the presumption under that statute, we require specific findings and conclusions regarding the presumption so we are not left guessing as to the court's rationale regarding the application of the presumption. *Id.* Specific factual findings are not required when the evidence of domestic violence does not rise to the level to trigger the domestic violence presumption, but that evidence can still be considered by the court as one of the best interest factors. *Cox*, 2000 ND 144, ¶ 17, 613 N.W.2d 516.

[¶ 10] Our analysis of Gietzen's argument about his claims of domestic violence by both parents requires a brief explanation of the evolution of domestic violence as a factor for child custody decisions. In 1989, the legislature amended N.D.C.C. §§ 14–05–22 and 14–09–06.2(1) to require a district court to consider evidence of domestic violence as a factor in determining child custody and visitation. 1989 N.D. Sess. Laws. ch. 178, §§ 1, 2. In 1991, the legislature amended N.D.C.C. §§ 14–05–22(3) and 14–09–06.2(1)(j) to provide that if the court finds credible evidence that domestic violence has occurred, that evidence

shall create a rebuttable presumption that awarding custody or granting visitation to the abusive parent is not in the best interests of the child. 1991 N.D. Sess. Laws ch. 148, §§ 1, 2. The 1991 amendments required the court to cite specific findings of fact to show that the custody or visitation arrangement best protects the child, parent, and other household members who are the victim of domestic violence. *Id.* at § 2. In *Schestler v. Schestler*, 486 N.W.2d 509, 511–13 (N.D.1992), a majority of this Court upheld an award of custody of two children to a perpetrator of domestic violence, concluding the domestic violence factor did not have priority over the other statutory factors for deciding custody and affirming the district court's finding that the presumption had been rebutted.

[¶ 11] In 1993, in response to *Schestler*, the legislature again amended N.D.C.C. §§ 14–05–22(3) and 14–09–06.2(1)(j) to strengthen the rebuttable presumption by requiring that custody could not be awarded to the perpetrator of domestic violence unless there was a showing by clear and convincing evidence that the best interests of the child requires the perpetrator's participation as a custodial parent. 1993 N.D. Sess. Laws ch. 144, §§ 1, 2. *See* Hearing on HB 1393 Before the House Human Servs. Comm., 53rd N.D. Legis. Sess. (Jan. 27, 1993) (written testimony of Bonnie Palecek, Executive Director, North Dakota Council on Abused Women's Services). Under the 1993 amendments, if necessary, the court may award custody to a suitable third person to protect the welfare of the child. 1993 N.D. Sess. Laws ch. 144, § 2. After the 1993 amendments, this Court indicated the presumption applied even though the evidence of domestic violence may have been isolated or remote in time. *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 17, 575 N.W.2d 921; *Anderson v. Hensrud*, 548 N.W.2d 410, 413 (N.D.1996).

[¶ 12] In construing and applying the 1993 amendments, we adopted a roughly proportional standard to assess situations when domestic violence has been committed by both parents. *Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995). We held that when domestic violence has been committed by both parents, the district court must measure the amount and extent of domestic violence inflicted by both parents. *Id.* If one parent inflicts significantly greater domestic violence than the other, the presumption against custody applies only to the parent inflicting the greater violence. *Id.* However, if the district court finds the amount and extent of violence inflicted by one parent is roughly proportional to the violence inflicted by the other parent, and both parents are otherwise found to be fit parents, the presumption against awarding custody to either perpetrating parent ceases to exist. *Id.*

[¶ 13] In 1997, the legislature again amended N.D.C.C. §§ 14–05–22 and 14–09–06.2(1)(j) to further define the circumstances giving rise to the presumption and to clarify the degree of domestic violence required to invoke the presumption. 1997 N.D. Sess. Laws ch. 147, § 1–3. *See Dinius v. Dinius*, 1997 ND 115, ¶ 18, 564 N.W.2d 300. Under the 1997 amendments, if the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, the combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of the child and the presumption may be overcome only by clear and convincing evidence that the best interests of the child requires that parent's participation as a custodial parent. N.D.C.C.

§ 14–09–06.2(1)(j). The 1997 amendments retained the language authorizing a custody award to a suitable third person if necessary to protect the welfare of the child.

[¶ 14] The legislative history for the 1997 amendments does not specifically discuss the situation of competing presumptions and the roughly proportional analysis for situations when both parents claim domestic violence has been committed by the other. In *Huesers v. Huesers*, 1998 ND 54, ¶ 9, 574 N.W.2d 880, however, this Court said the 1997 amendments made no change to the required proportional analysis when both parents have committed domestic violence.

[¶ 15] Here, the district court's finding about domestic violence provides:

> Both parties claim to be the victims of domestic violence. Jessica has testified that Christopher physically abused her during their relationship from 1995 for the final time in early 2002. She testified that Christopher punched her, shoved her, pinched her, snapped his fingers against her head, grabbed her hands and forced her to hit herself and choked her. She also testified that Christopher was verbally abusive to her. As the parties spiraled downward towards their final separation the violence and intimidation escalated. Jessica testified that in December of 2001, Christopher choked her until she was unconscious. Christopher admitted choking Jessica but testified that she was extremely agitated and was coming at him with a knife.
>
> The parties were again together in 2002. Jessica contacted the police stating that Christopher had threatened her with his pocket knife. Christopher maintained that he had chosen that particular time to use the knife to clean his fingernails. No charges were filed. On January 6, 2002, Christopher called Jessica several times that evening requesting that she give him a haircut. Jessica initially declined and offered to pay for him to get a haircut. He insisted and eventually Jessica went to his home to give him the haircut. Given the current state of their relationship this was an extremely bad idea. An argument ensued. Tempers flared. Jessica intentionally wounded Christopher with the scissors. Although initial police reports described the offenses as attempted murder, terrorizing, and domestic violence (aggravated assault) Jessica pled guilty to an Amended Information charging her with Assault. She was sentenced to 1 year in prison, first to serve[ ] 45 days in the custody of the Cass County Sheriff and the balance of 320 suspended for a period of 2 years during which time she was placed on supervised probation. She was ordered to pay $915.41 in restitution, ordered to attend a Domestic Violence Assessment and Evaluation and follow through on all recommendations and to not have contact with Christopher unless approved in advance and in writing by her supervising probation officer. No evidence was presented that she violated any of the terms and conditions of her supervised probation.
>
> Since January 7, 2002 it appears that the parties have cooperated in [the child's] parenting. Other than some argument on visitation or visitation transportation, the parties appear to be working cooperatively. Both parties have indicated that they have matured since January of 2002 and have been better at working out their differences.
>
> If the Court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which results in serious bodily injury or involved the use of a danger-

ous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. It appears in this case that domestic violence has been committed by both parties in this case. Accordingly, the Court must "measure the amount and extent" inflicted by both parents[.] *Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995) [*Krank I* ]. If one parent has inflicted a "substantially greater" amount and extent of domestic violence than the other, the presumption against awarding custody is applied to that parent. *Id.* If the amount and extent of domestic violence by the parties is "roughly proportional," this Court "is not bound by any presumption, but may consider the remaining customary best interest factors in making its custody decision." *Id.* While in this case it appears that both parties have previously perpetrated domestic violence on the other, the facts of this case including the recent past behavior of the parties and their current circumstances indicate that domestic violence between the parties is unlikely to occur in the future.

This factor favors neither.

[¶ 16] The district court's finding stated both parties had perpetrated domestic violence, but the court did not specifically state if the violence was of a sufficient degree to trigger the presumption or specifically measure the amount and extent of domestic violence *inflicted* by each parent. Instead, the court cited the proportionality test and stated the facts and parties' circumstances indicate the domestic violence is unlikely to occur in the future and this factor favors neither party. This Court has recognized that "domestic violence is a learned pattern of behavior aimed at gain-

ing a victim's compliance," and "[w]hile separation may be more successful than rehabilitation in ceasing the violence, separation 'does not change the psychological characteristics of the parties.'" *Engh v. Jensen*, 547 N.W.2d 922, 926 (N.D.1996) (quoting *Heck v. Reed*, 529 N.W.2d 155, 164–65 (N.D.1995) and *Krank v. Krank*, 541 N.W.2d 714, 718 (N.D.1996)).

[¶ 17] Here, the district court's analysis and explanation focused on the likelihood of domestic violence occurring between the parties in the future. From the court's findings and explanation, however, we are unable to discern if the court found the presumption was triggered, or measured the amount or extent of domestic violence by both parents. Although the court said the domestic violence factor favored neither parent, the court did not make a specific finding on the amount and extent of domestic violence and the court did not address the possible application of the presumption. This Court has recognized that "[b]ecause of the more detailed analysis necessarily involved in determining which parent may get the presumption when reciprocal abuse is alleged, we require a trial court to focus its findings more carefully and specifically on the degree of violent behavior by each parent." *Reeves v. Chepulis*, 1999 ND 63, ¶ 14 n. 1, 591 N.W.2d 791 (citing *Zimmerman v. Zimmerman*, 1997 ND 182, ¶ 9, 569 N.W.2d 277 and *Owan v. Owan*, 541 N.W.2d 719, 722–23 (N.D.1996)). If the court finds domestic violence that triggers the presumption, the court then must analyze whether the presumption has been overcome in favor of a parent by evidence that is clear and convincing, or whether other suitable custodial arrangements with a third person should be made. N.D.C.C. § 14–09–06.2(1)(j) ("This presumption may be overcome only by clear and convincing evidence that the best interests of the child

require that parent's participation as a custodial parent.").

[¶ 18] Gabel nevertheless claims that even if her domestic violence is greater than Gietzen's, he is not entitled to custody because of his purported continuing drug use. Although Gietzen admitted he used and sold illegal drugs until January 2002, the district court specifically found "no credible evidence that [Gietzen] has used illegal drugs since January of 2002." Gabel's reliance on Gietzen's claimed continuing drug use to sustain the court's decision is not supported by the court's findings.

[¶ 19] From the district court's findings, we are unable to say the court correctly applied the law for domestic violence, and we therefore reverse the custody award and remand for appropriate findings and application of N.D.C.C. § 14–09–06.2(1)(j).

### III

[¶ 20] Gietzen also claims several of the district court's findings on issues other than domestic violence are not supported by the evidence. He generally claims the findings describe some events without giving benefit to his version of the events, understate other facts, and are inconsistent. We have reviewed the other findings challenged by Gietzen, and we are not left with a definite and firm conviction the court made a mistake. On this record, we conclude those findings are not clearly erroneous.

### IV

[¶ 21] We reverse the judgment and remand for findings under the correct application of the law for domestic violence.

[¶ 22] SANDSTROM, J., concurs.

MARING, Justice, dissenting.

[¶ 23] I respectfully dissent. I believe the trial court did adequately set forth the standard for evaluating the impact of domestic violence on a child custody determination and properly applied that standard. Our Court's standard for evaluating the impact domestic violence committed by both parents has on a child custody determination requires:

> [T]hat if domestic violence has been committed by both parents, the trial court measure the amount and extent of domestic violence inflicted by both parents. If the amount and extent of domestic violence inflicted by one parent is significantly greater than that inflicted by the other, the statutory presumption against awarding custody to the perpetrator will apply only to the parent who has inflicted the greater domestic violence, and will not apply to the parent who has inflicted the lesser. However, if the trial court finds that the amount and extent of the violence inflicted by one parent is roughly proportional to the violence inflicted by the other parent, and both parents are otherwise found to be fit parents, the presumption against awarding custody to either perpetrating parent ceases to exist. In such a case, the trial court is not bound by any presumption, but may consider the remaining customary best-interests factors in making its custody decision.

*Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995) (footnote omitted).

[¶ 24] The majority argues that because our statute governing the impact of domestic violence was amended in 1997, this amendment altered our standard for dealing with situations when domestic violence is committed by both parents. Instead of following our long-settled *Krank* standard, the majority would have the presumption against custody arise against

both parents whenever evidence is present of domestic violence sufficient to trigger the presumption under N.D.C.C. § 14–09–06.2(1)(j) for both parents. The effective impact of such a change would be to require that custody of a child is awarded to a third person whenever the statutory presumption against both parents arises under N.D.C.C. § 14–09–06.2(1)(j), unless one of the parents is able to present clear and convincing evidence that rebuts the presumption. This Court has set a very high threshold for overcoming the presumption. This would be the result even in situations when the levels of domestic violence perpetrated by both parents are grossly disproportionate.

[¶ 25] The change in N.D.C.C. § 14–09–06.2(1)(j) enacted in 1997 simply provides no justification for such a change:

> Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, *and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding,* this ~~evidence~~ *combination* creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards custody to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01. *A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.*

1997 N.D. Sess. Laws ch. 147, § 2.

[¶ 26] Support for the majority's sea change in our child custody jurisprudence is also non-existent in the legislative history, which does not indicate a departure from the *Krank* standard.

> SB 2235 does not change the impact of domestic violence in a custody determination. What it does do, however, is to allow the court to also look for a pattern or, if a single act, the severity as well as to the proximity of the acts. When the court finds credible evidence of domestic violence the court need also examine whether there was one incident of domestic violence which resulted in serious[ ] bodily injury or involved the use of a dangerous weapon, or a pattern of domestic violence, all within a reasonable time proximate to the proceeding. If violence exists through a serious single act or a pattern the presumption kicks in that the perpetrator should not have sole or joint custody. The burden to rebut the presumption is on the perpetrator. Through these changes SB 2235 does not remove domestic violence from its importance in making the custo-

dy decision, but rather sketches in its connection.

*Hearing on S.B. 2235 Before the Senate Judiciary Comm.*, 55th N.D. Legis. Sess. (Jan. 27, 1997) (testimony of Sherry Mills Moore, Chair of North Dakota State Bar Association Family Law Task Force). It is also clear from the legislative history of the 1997 change that the legislature was aware of our application of N.D.C.C. § 14–09–06.2(1)(j) in the context of situations in which both parents inflict domestic violence. *See Hearing on S.B. 2235, supra* (memorandum of Billie Brunsoman, intern, p. 3). Yet, the legislature elected not to change the statute to address the *Krank* standard.

[¶ 27] We recognized that the legislature's amendment of N.D.C.C. § 14–09–06.2(1)(j) did not alter the *Krank* standard for dealing with two parents who have each committed domestic abuse. In *Huesers v. Huesers*, 1998 ND 54, ¶ 9, 574 N.W.2d 880, we explained:

> When domestic violence has been committed by both parties, the court must measure the amount and extent of domestic violence inflicted by both. *Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995). If one parent inflicts significantly greater domestic violence than the other, the presumption against custody applies only to the parent inflicting the greater violence. *Id.* When there is equal violence by both parents, the presumption does not apply. *Id. The amended language makes no change to this required proportional analysis when both parents have committed domestic violence.* The court must determine which parent has committed the greater pattern of violence at times reasonably close to the divorce action.

(Emphasis added.)

[¶ 28] Today, with little explanation and no justification, the majority has sud-denly decided to legislate its own new course. I cannot agree. The changes made in 1997 to N.D.C.C. § 14–09–06.2(1)(j) have been before this Court numerous times and we have never questioned the continuing validity of the *Krank* standard following the 1997 amendments. *See Thompson v. Olson*, 2006 ND 54, ¶ 16, 711 N.W.2d 226; *Schumacher v. Schumacher*, 1999 ND 149, ¶ 19, 598 N.W.2d 131; *Reeves v. Chepulis*, 1999 ND 63, ¶ 14 n. 1, 591 N.W.2d 791 (emphasis added) (stating "[w]hile *section 14–09–06.2(1)(j) does not specifically set forth a procedure for addressing reciprocal domestic violence,* we have said the trial court must 'measure the amount and extent of domestic violence inflicted by both parents,' and 'make detailed findings' determining whether the presumption arises as to one parent or not at all"); *Zimmerman v. Zimmerman*, 1997 ND 182, ¶¶ 7–8 n. 1, 569 N.W.2d 277. Section 14–09–06.2(1)(j), N.D.C.C., does not specifically provide for situations when both parents have committed domestic violence. *Reeves*, 1999 ND 63, ¶ 14 n. 1, 591 N.W.2d 791. We fashioned a response in *Krank* that reflects the concerns of the legislature and the legislature, despite clear evidence that they were aware of our response, did not see fit to chart a new course in 1997, or at any point thereafter. If support existed in the legislative history of the 1997 amendments that this Court erred in its use of the *Krank* standard, I might be persuaded otherwise.

[¶ 29] I would apply, as the trial court clearly did, our existing standard. Here, the trial court outlined the evidence of domestic violence committed by both parties. The trial court first established proof of a pattern of domestic violence by Gietzen and then a single serious incident by Gabel. The trial court next outlined the N.D.C.C. § 14–09–06.2(1)(j) standard for domestic violence sufficient to give rise to

the presumption against custody. The trial court then concluded by stating: "It appears in this case that domestic violence has been committed by both parties." The majority believes the trial court did not make a finding that domestic violence had occurred that raised the presumption. However, if such a finding was not made, it appears the trial court proceeded to engage in superfluous verbosity by then outlining the *Krank* standard and concluding both committed domestic violence. Clearly, the trial court found both parties had committed domestic violence that raised the presumption. The trial court also found the level of violence committed by both parties was roughly proportional. Although not specifically stating "I find the level of violence committed by both parties to be roughly proportional," I cannot accept, as the majority does, that the trial court would lay out the correct standard in one sentence and then ignore what it just said in the next. The trial court concluded the factor favored neither party, implying the domestic violence was proportional.

[¶ 30] The trial court also stated: "While in this case it appears that both parties have previously perpetrated domestic violence on the other, the facts of this case including the recent past behavior of the parties and their current circumstances indicate that domestic violence between the parties is unlikely to occur in the future." This also indicates that the trial court found the level of violence perpetrated by both parties was roughly proportional, thus the presumption against custody arose against neither.

[¶ 31] By evaluating the possibility for future violence, the trial court is not injecting an impermissible consideration into the best-interest factors. The court merely indicated that, while the presumption has not arisen against either party, the fact of the past violence is still a consideration, as

it should be. A trial court, when faced with a situation in which the presumption against custody due to domestic violence either has never arisen or has been overcome should not then be required to turn a blind eye to the fact of the violence. Section 14–09–06.2(1)(j), N.D.C.C., does not limit the trial court's consideration of domestic violence in a best-interests determination to only those situations when the presumption has arisen.

[¶ 32] This case involves one instance of admittedly severe and unacceptable violence committed by Gabel, and a continuing pattern of domestic violence committed by Gietzen. The majority would have a presumption against custody arise against both parents; a presumption that can only be overcome by clear and convincing evidence. This is a difficult burden for a parent to overcome and, in many cases, will result in neither parent being granted custody under the statute. In enacting its 1997 amendments, I do not believe the legislature intended to tear children from both parents and place them with a third party in every case in which both parents have committed domestic violence. Undoubtedly, situations may arise when violence is committed by both parents and placing the child with a third party will be in that child's best interest. However, the existing *Krank* standard allows trial courts to do just that when the circumstances so require.

[¶ 33] I would affirm.

[¶ 34] Mary Muehlen Maring

VANDE WALLE, Chief Justice, concurring specially.

[¶ 35] I concur in the result of the majority opinion insofar as it remands for specific findings of fact including whether or not the findings of domestic violence raise the presumption under N.D.C.C. § 14–09–06.2(1)(j).

[¶ 36]   I concur in the dissent insofar as it sets forth the standard to be used in applying the presumption under § 14–09–06.2(1)(j).

[¶ 37]   Crothers, J., concurs.