757 N.W.2d 58 (2008)
2008 ND 194
P.A., Plaintiff, Appellee and Cross-Appellant
v.
A.H.O., Defendant, Appellant and Cross-Appellee.
No. 20080049.
Supreme Court of North Dakota.
October 27, 2008.
*59 Tom P. Slorby, Slorby Law Office, Minot, ND, for plaintiff, appellee and cross-appellant.
H. Malcolm Pippin, Nilles, Ilvedson, Plambeck & Selbo, Ltd., Williston, ND, for defendant, appellant and cross-appellee.
*60 VANDE WALLE, Chief Justice.
[¶ 1] A.H.O. appealed from a district court judgment granting A.H.O. and P.A. joint custody of their son, J.O. A.H.O. argues that she should have been awarded primary physical custody. P.A. cross-appeals, asserting that the district court did not err in awarding joint custody, but if it was error, he should have been given primary physical custody. We affirm, holding that the district court was not clearly erroneous in awarding joint custody.

I.
[¶ 2] Our review of the record reveals the following facts: J.O. was born in August 2002. His parents, A.H.O. and P.A., were never married, but they lived together in Minot at the time of J.O.'s birth, where they remained until they terminated their relationship in August 2003. Over the next few years, A.H.O. and P.A. embarked upon different paths which had different effects upon J.O.
[¶ 3] After her break-up with P.A., A.H.O. attended the University of North Dakota in Grand Forks. Approximately two years later, but before obtaining her bachelor's degree, A.H.O. began taking courses at a culinary school in Chicago, and graduated with an associate's degree in December of 2006. A.H.O. had previously obtained a high school diploma.
[¶ 4] Meanwhile, P.A. began his own educational pursuits. P.A. had previously dropped out of high school, obtained his G.E.D., and took classes at Minot State University and Bismarck State College before withdrawing. After his relationship with A.H.O. ended, P.A. made three failed attempts at a paramedic program, once withdrawing voluntarily, and twice being expelled for "clinical absenteeism" and "violat[ing] the policy related to academic dishonesty." While not completing an educational program as a paramedic, P.A. did obtain certification as an EMT, and gained employment with the Minot Community Ambulance Service. A typical work schedule for P.A. is 56 hours per week, including some shifts which last for 24 hours. P.A. may also be on-call for 16 additional hours per week. P.A.'s employer testified that the company was considering cutting back the length of work shifts. P.A. makes approximately $28,000 per year at his job.
[¶ 5] Between August 2003 and May 2007, when this litigation began, J.O. moved from family member to family member, spending time in various cities. From approximately August 2003 to November 2003, J.O. spent time with A.H.O. in Grand Forks, as well as time with P.A. in Minot. P.A. and A.H.O. disagree on who J.O. actually lived with during this time period. Each party insists that J.O. resided with them. However, they each concede that J.O. at least spent time with each parent, in their respective cities, over the course of these few months. In November of 2003, J.O. went to stay with A.H.O.'s mother in Williston, and was there until April of 2004, when J.O. returned to Minot to stay with P.A. That fall, J.O. again returned to Williston to stay with his grandmother for the duration of the school year. A.H.O. joined J.O. in Williston in the summer of 2005, before J.O. went back to Minot to stay with P.A. and his parents. P.A.'s parents have helped take care of J.O. on many occasions, particularly when P.A. works a 24-hour shift. During this entire period, there was no custody order in place regarding J.O.
[¶ 6] In May of 2007, P.A. filed a petition for an interim order granting him temporary custody of J.O., professing a concern that A.H.O., having recently completed her degree in Chicago, would seek to take J.O. back to Illinois with her. After receiving P.A.'s complaint, A.H.O. returned *61 to Minot. Upon her return, A.H.O. began working as a server in a local restaurant, where her schedule has been described as "flexible" and "accommodating." A.H.O. earns approximately $17,000 per year at this job. A.H.O. began volunteering at J.O.'s school, including as a room parent for school functions. A.H.O. moved into a house three blocks from P.A., and both parties have, on occasion, accommodated the other's schedule to take care of J.O. The parties' families have also been flexible when allowing J.O. to attend the other family's events, and A.H.O.'s mother testified that P.A. would be welcome in her home.
[¶ 7] However, there have also been instances of conflict between P.A. and A.H.O. in the past. At a birthday party for J.O. at P.A.'s parents' house, A.H.O. was not allowed to enter the building, but had to remain on the porch to give J.O. his birthday gift. P.A.'s father has previously stated that A.H.O. was not welcome in his home, and P.A.'s parents allegedly became upset with P.A.'s sister for having lunch with A.H.O. P.A. has accused A.H.O. of hiding Halloween activities from him. There was also testimony at trial regarding hostilities between A.H.O., P.A., and P.A.'s new girlfriend, M.T., including vocal arguments between A.H.O. and M.T. in front of J.O. In addition, P.A. alleged that A.H.O. has continued to pursue a relationship with him while he has dated M.T., although he admitted to having sexual intercourse with A.H.O. and sending her romantically-charged e-mails since he has been involved with M.T.
[¶ 8] In July of 2007 the district court entered an interim order awarding the parties joint custody on a weekly alternating basis, which the court made permanent in a December 2007 order. Notwithstanding the conflicts between the parties, P.A. and A.H.O. have jointly cared for J.O. in accordance with the orders of the district court, which noted in its December 2007 order that, "The most secure and permanent time in [J.O.]'s life has occurred since this litigation started, and since the parties started to share equal time with him." Furthermore, both parties believe the other should continue to play an important role in J.O.'s life. However, neither party sought joint custody in this matter.

II.
[¶ 9] A custody award is a finding of fact which will not be set aside unless clearly erroneous, that is, if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if the reviewing court, on the entire evidence, has a definite and firm conviction the trial court made a mistake. Peek v. Berning, 2001 ND 34, ¶ 4, 622 N.W.2d 186. Custody will be awarded to the parent who will, in the opinion of the judge, promote the best interests of the child. N.D.C.C. § 14-09-06.1. The best interests and welfare of the child will be determined by the court's consideration of several factors:
a. The love, affection, and other emotional ties existing between the parents and the child.
b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.
e. The permanence, as a family unit, of the existing or proposed custodial home.

*62 f. The moral fitness of the parents.
g. The mental and physical health of the parents.
h. The home, school, and community record of the child.
i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
j. Evidence of domestic violence. . . . If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. . . .
k. The interaction and interrelationship. . . of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. . . .
l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child. . . .
m. Any other factors considered by the court to be relevant to a particular child custody dispute.
N.D.C.C. § 14-09-06.2.
[¶ 10] While the district court must review and consider all of the best interests factors as laid forth in N.D.C.C. § 14-09-06.2, it need not make a specific finding for each factor. Cox. v. Cox, 2000 ND 144, ¶ 10, 613 N.W.2d 516. Rather, the court's findings should be sufficiently stated so that a reviewing court may understand the factual basis for the district court's decision. Schumacher v. Schumacher, 1999 ND 149, ¶ 16, 598 N.W.2d 131.

III.
[¶ 11] Both A.H.O. and P.A. argue the district court erred in weighing certain best interests factors in favor of the other party.
[¶ 12] Under factor (b), P.A. argues the district court erred in finding A.H.O. was more disposed to continue J.O.'s education. Specifically, P.A. argues A.H.O.'s involvement in J.O.'s school activities was not persuasive because J.O. had been in kindergarten for less than three months at the time of trial. However, the court found that A.H.O. was generally more focused on education because of her high school diploma, that she attended college, and earned a degree from a culinary school. In contrast, the court pointed out that P.A. has a GED, had not been successful in his college education, and had not completed any advanced programs. We have previously upheld a custody order where the district court found factor (b) in favor of a parent who had achieved a college degree and had fostered her child's education, while the other parent had only completed two years of college and had not been involved in his child's educational activities. Schneider v. Livingston, 543 N.W.2d 228, 231 (N.D.1996). In this case, the district court was not clearly erroneous in finding that A.H.O. was more disposed to further J.O.'s education.
[¶ 13] Under factor (c), the district court found that while both parties were equally willing and disposed to provide for J.O.'s needs, P.A. was in a better position to do so because his $28,000 per year salary was greater than A.H.O.'s $17,000 per year income. A.H.O. argues the district court was clearly erroneous in finding factor (c) to favor P.A., and that it *63 is inappropriate to consider a party's income level in the best interests analysis. Money alone is not the totality of factor (c), but it has some relevance the district court can consider in its best interests analysis. For example, we have held that when both parents are disposed to provide the child with food, clothing, medical care, and other material needs, one party's history of higher-income employment, while the other was unemployed and depended upon child support, was a relevant consideration in the best interests analysis. Krank v. Krank, 2003 ND 146, ¶ 10, 669 N.W.2d 105. The trial court's finding on this factor was not clearly erroneous.
[¶ 14] A.H.O. argues the district court erred by not giving proper consideration to P.A.'s more hectic work schedule. This Court has previously reviewed the schedules of parents under factor (e) of the best interests analysis, as it implicates a child's prospects for a stable family environment. See Shaw v. Shaw, 2002 ND 114, ¶ 9, 646 N.W.2d 693. While the district court did not specifically mention P.A.'s work schedule in its order, we will not find a lower court's findings of fact erroneous if supporting evidence is "fairly discernible by deduction or inference" from the record. Ness v. Ness, 467 N.W.2d 716, 718 (N.D.1991). In this case, the district court could have inferred that P.A.'s parents would continue to help care for J.O. during P.A.'s longer work absences. See Cox, 2000 ND 144, ¶ 24, 613 N.W.2d 516 (giving weight to the child's extended family members who were willing to assist the father and support him in parenting the child). In addition, the court heard testimony that P.A.'s employer was close to implementing a schedule change which would shorten the EMT work shifts. Evidence supporting the district court's findings is fairly discernible and the district court did not err in analyzing the best interests factors.

IV.
[¶ 15] A.H.O. argues the best interests factors under N.D.C.C. § 14-09-06.2 should each be given equal weight, and contends that the law should be interpreted as awarding custody to the party who has the most factors weighing in his or her favor. This Court has previously stated the best interests factors should be given equal consideration in a court's analysis, save the overriding consideration to be given credible evidence of domestic violence. Ternes v. Ternes, 555 N.W.2d 355, 357-58 (N.D.1996). However, we have not interpreted "equal consideration" or "equal weight" to mean a mathematical formula by which the factors are added up and the person with the most factors in their favor is awarded custody. While each factor relevant to a child should be given equal consideration, some factors may prove to be more important in one situation than in another with different circumstances. The best interests of the child is a fact-intensive test which must be examined on a case-by-case basis.

V.
[¶ 16] A.H.O. argues, regardless of the best interests factors, she should be awarded primary physical custody because joint custody is a disfavored custody arrangement.
[¶ 17] An award for rotating physical custody is not clearly erroneous if it is supported by a district court's findings that it is in the best interests of the child. Peek, 2001 ND 34, ¶ 20, 622 N.W.2d 186. Whether or not joint custody is in the best interests of a child depends on the facts and circumstances of the particular case. Lapp v. Lapp, 293 N.W.2d 121, 128 (N.D. 1980). We have never held there is a *64 presumption against joint custody. However, it is generally not in a child's best interests to be "bandied back and forth." Kasprowicz v. Kasprowicz, 1998 ND 68, ¶ 15, 575 N.W.2d 921. Therefore, to affirm a trial court's award of joint custody, it is necessary for the trial court to find that joint custody is in the child's best interests.
[¶ 18] In this case, the district court found joint custody to be in J.O.'s best interests, and the evidence in the record supports such a finding. Both parties have love and affection for J.O., and both are disposed to contribute to his well-being. J.O.'s extended family on both his mother's and father's side have maintained a strong and positive presence in his life. Significantly, as the district court noted, since the parties began sharing custody, J.O. has experienced the first real period of stability and permanence in his life. It is not clearly erroneous to continue the positive course that J.O. is on by maintaining a joint custody arrangement.
[¶ 19] A.H.O. argues there is an inability between herself and P.A. to cooperate in a joint custody arrangement. We have previously noted the importance of the parents' ability to cooperate in order to make joint custody orders work. See Kaloupek v. Burfening, 440 N.W.2d 496, 499 (N.D.1989) ("If [the parents] cannot set aside their differences and conflict[s] when dealing with their roles as parents, the innocent child will most surely suffer."). Writers continue to stress the necessity of a civil relationship in joint custody situations. See 2 Sandra Morgan Little, Child Custody & Visitation Law and Practice § 13.01[1] (2008) ("[A] joint custody arrangement can work only if the parents are able to cooperate.").
[¶ 20] In the record before us, there are examples of hostility and conflict between A.H.O. and P.A. over the past few years, including friction between A.H.O. and M.T., as well as difficulties between A.H.O. and P.A.'s parents. However, this does not mean A.H.O. and P.A. have been unable to communicate and agree for J.O.'s sake. They can, and have, agreed on J.O.'s care. They have cooperated and have been flexible in accommodating each other's schedule. They have both admitted the importance of keeping the other in J.O.'s life. P.A. and A.H.O. may have their problems, but they have shown the ability to put J.O. above their differences. It was not clearly erroneous for the district court to award them joint custody.

VI.
[¶ 21] We have considered the remaining issues and arguments raised by the parties and determine they are either unnecessary to our decision or without merit. The judgment awarding joint custody is affirmed.
[¶ 22] MARY MUEHLEN MARING, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., and WILLIAM A. HERAUF, D.J., concur.
[¶ 23] The Honorable WILLIAM A. HERAUF, D.J., sitting in place of CROTHERS, J., disqualified.