2010 ND 130

**Darnell K. BOECKEL, Plaintiff and Appellee**

v.

**Jocelyn K. BOECKEL, Defendant and Appellant.**

**No. 20090302.**

Supreme Court of North Dakota.

July 13, 2010.

214

KAPSNER, Justice.

[¶ 1] Jocelyn Boeckel appeals from an amended divorce judgment. We affirm the district court's valuation and distribution of the parties' marital estate and its refusal to award attorney fees to Jocelyn Boeckel. We reverse and remand the case for further findings regarding the applicability of the rebuttable presumption against awarding custody to the perpetrator of domestic abuse.

I.

[¶ 2] Darnell Boeckel and Jocelyn Boeckel were married in 1994 and lived on a farm near Lemmon, S.D. The parties have three children together, aged eight to fourteen at the time of trial. In April 2005, the parties separated, and Darnell Boeckel filed for divorce. Jocelyn Boeckel and the children moved to Lemmon, while Darnell Boeckel continued to reside on the farm. In February 2006, the district court appointed a custody investigator, who recommended awarding physical custody to Jocelyn Boeckel, with Darnell Boeckel re-

ceiving visitation rights.[1] In August 2006, Jocelyn Boeckel's parents were killed in an automobile accident. Jocelyn Boeckel and her sister were the heirs to their parents' estate.

[¶ 3] In February 2007, Darnell Boeckel and Jocelyn Boeckel entered into a "Stipulation For Entry Of Divorce Decree, With Partial Judgment," which provided:

> The parties hereby stipulate to the entry of a judgment and decree of divorce herein, with issues of custody, visitation, and child support being settled. The Court will retain jurisdiction over issues of property and debt distribution, which have not been settled, and those matters will be decided in a further hearing.

The parties agreed to reserve the issue of property distribution because litigation over Jocelyn Boeckel's parents' estate remained ongoing, and it was unclear what, if any, property she would actually inherit. The district court entered a divorce judgment in conformity with the parties' stipulation. The judgment awarded physical custody of the parties' children to Jocelyn Boeckel, with Darnell Boeckel receiving visitation rights. With regard to property distribution, the divorce judgment stated: "The equitable division of the marital estate and debts will be determined at a later date, and the Court reserves jurisdiction for that purpose."

[¶ 4] For approximately six months after the entry of the divorce judgment, the parties both lived near Lemmon, and Darnell Boeckel enjoyed significant visitation with the children. Without first informing Darnell Boeckel, Jocelyn Boeckel moved with the children to Williston, N.D. in December 2007. Jocelyn Boeckel moved because her boyfriend, Chad Barnes, had found work in the Williston area. Jocelyn Boeckel and Barnes subsequently married in April 2008 and had a child in December 2008. After Jocelyn Boeckel and the parties' children moved to Williston, Darnell Boeckel filed a motion to amend the divorce judgment. Darnell Boeckel asked the district court to award him custody of the parties' children and to distribute their marital estate. While the motion was pending before the district court, Darnell Boeckel's mother died in October 2008. Darnell Boeckel was the sole heir to his mother's estate.

[¶ 5] The district court reappointed the custody investigator, who advised the court to award primary physical custody to Darnell Boeckel, thereby changing her original recommendation. The district court held a bench trial in April 2009. In July 2009, the district court issued findings of fact and an order for amended judgment. The district court found the children's environment in Williston could endanger their physical or emotional health and their best interests would be furthered by residing with Darnell Boeckel. The district court awarded physical custody to Darnell Boeckel. The district court also divided the parties' marital estate and required each pay their own attorney fees. The district court included property Jocelyn Boeckel inherited from her parents in the parties' marital estate, but not the property Darnell Boeckel inherited from his mother. Jocelyn Boeckel now appeals, arguing the district court erred by awarding physical custody to Darnell Boeckel, in its distribution and valuation of the parties'

---

1. The Legislature amended N.D.C.C. ch. 14–09 during the 2009 session. Effective August 1, 2009, "custody" and "visitation" are now called "primary residential responsibility" and "parenting time." *See* 2009 N.D. Sess. Laws ch. 149, § 9. However, because the district court made its decision under the prior version of N.D.C.C. ch. 14–09, this opinion uses the prior terminology.

marital estate, and by failing to award her attorney fees.

## II.

[¶ 6] Where a party files a motion to modify custody less than two years after the date of the original order establishing custody, the district court cannot modify custody "unless the court finds the modification is necessary to serve the best interest of the child and:

> a. The persistent and willful denial or interference with visitation;
>
> b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or
>
> c. The primary physical care of the child has changed to the other parent for longer than six months."

N.D.C.C. § 14–09–06.6(5). The district court found, "[a]s a result of Jocelyn moving to Williston, the parties' stipulated visitation schedule was no longer workable." The district court also found "the children's environment in Williston may endanger their physical or emotional health" because "[t]hey have had numerous conflicts, some physical as reported by [the custody investigator], with Chad [Barnes]." Jocelyn Boeckel does not appeal these findings.

[¶ 7] The district court also found the best interest of the child factors favored Darnell Boeckel. At the time of the district court hearing in this matter, N.D.C.C. § 14–09–06.2(1) identified the following factors as affecting the best interests of the child:

> a. The love, affection, and other emotional ties existing between the parents and child.
>
> b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
>
> c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
>
> d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.
>
> e. The permanence, as a family unit, of the existing or proposed custodial home.
>
> f. The moral fitness of the parents.
>
> g. The mental and physical health of the parents.
>
> h. The home, school, and community record of the child.
>
> i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
>
> j. Evidence of domestic violence . . . as defined in section 14–07.1–01. . . .
>
> k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.
>
> l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.
>
> m. Any other factors considered by the court to be relevant to a particular child custody dispute.

In applying the best interest of the child factors, the district court found factors (d), (e), (h), and (i) favored Darnell Boeckel, factors (b) and (j) favored Jocelyn Boeckel, and factors (a), (c), (f), and (g) favored neither party. While it did not clearly state so, the district court apparently considered factor (k) to favor neither party. The district court also noted the custody investigator recommended Darnell Boeckel be awarded physical custody.

[¶ 8] Jocelyn Boeckel now appeals, arguing the district court was clearly erroneous to find the best interest of the child factors favored Darnell Boeckel based in part upon the potential presence of Barnes in her Williston home. Jocelyn Boeckel also argues the district court erred in its application of factor (j) because it did not invoke the rebuttable presumption against awarding custody to the perpetrator of domestic abuse.

■■■■ [¶ 9] This Court recently explained its review of a district court's custody award in *Heinle v. Heinle*, 2010 ND 5, ¶ 6, 777 N.W.2d 590:

> "A district court's award of custody is treated as a finding of fact and, on appeal, will not be reversed unless it is clearly erroneous under N.D.R.Civ.P. 52(a)." *Lindberg*[ *v. Lindberg* ], 2009 ND 136, ¶ 4, 770 N.W.2d 252 (quoting *Wessman v. Wessman*, 2008 ND 62, ¶ 12, 747 N.W.2d 85). "Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of the witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Lindberg*, at ¶ 4 (quoting *Jelsing v. Peterson*, 2007 ND 41, ¶ 11, 729 N.W.2d 157).

### A.

■■■ [¶ 10] In the district court's discussion of factors it found favored Darnell Boeckel, the district court repeatedly referenced conflicts between Jocelyn Boeckel and her new husband, Chad Barnes, as well as between Barnes and the parties' children. Under factor (d), the district court stated: "Since Jocelyn has moved to Williston there have been numerous conflicts between [Barnes] and the children. [Barnes] is now out of the home because Jocelyn obtained a Domestic Violence Protection Order against [him]. Currently, the environment in Williston is not stable or satisfactory." Under factor (e), the district court again noted Barnes was no longer residing in Jocelyn Boeckel's Williston home, but stated his "return to the home is uncertain at this time." In discussing factor (h), the district court stated Jocelyn Boeckel's Williston home "has been in turmoil because of the boys' conflicts with [Barnes] and the Protection Order against [him]." Under factor (k), the district court stated the environment at Jocelyn Boeckel's Williston home "has been disrupted because of the domestic violence. There have been numerous conflicts between [Barnes] and the children." The district court also noted the possibility of Barnes returning to the home, stating: "Jocelyn testified that she wants to work on her relationship with [Barnes]. If everything goes right, [Barnes] would come back into the home." In conclusion, the district court stated it was awarding physical custody to Darnell Boeckel "[b]ecause of Jocelyn's move to Williston interfering with Darnell's visitation, the conflicts between [Barnes] and the children and the recent domestic violence between [Barnes] and Jocelyn. . . ."

[¶ 11] Because Barnes was not residing in her Williston home at the time of trial, Jocelyn Boeckel argues the district court was clearly erroneous to find the best in-

terest of the child factors favored Darnell Boeckel based in part upon Barnes' potential presence in the home. Rather, Jocelyn Boeckel argues the district court should have evaluated the best interest factors under the circumstances at the time of trial, specifically Barnes residing outside the home. However, Jocelyn Boeckel's argument fails to recognize the relevance and likely importance of Barnes in the lives of the parties' children. At the time of trial, Jocelyn Boeckel and Barnes remained married and recently had a child together. Jocelyn Boeckel testified she desired to reconcile with Barnes if they can work out their issues and Barnes completed an anger management class. With regard to her and Barnes' relationship, she testified: "I very strongly believe in marriage.... And I didn't go into my marriage with [Barnes] as a short term thing. I want to work on it if at all possible because [her and Barnes' child] deserves to have her parents." Based upon this evidence, the district court correctly found Barnes was relevant to the best interests of the children because, "[i]f everything goes right, [Barnes] would come back into the home."

[¶ 12] Further, the evidence regarding Barnes supports the district court's findings. The custody investigator's 2009 report stated social services received multiple reports of suspected child abuse or neglect at Jocelyn Boeckel's Williston home beginning in the spring of 2008. The custody investigator reported the second social services' report "alleged verbal, physical and emotional abuse of the [parties' children] by [Barnes]." The custody investigator's report included several instances of such alleged abuse. According to the custody investigator, one of the parties' children told her: "[Barnes] and he got into a fight and [Barnes] grabbed his shirt and held him up until he could not breathe." The same child told the custody

investigator that, on two different occasions, "[Barnes] called him fat and lazy and started [choking] him," and Barnes also poked him in the chest, leaving a red mark. A second child told social services that "[Barnes] would smack him" and, on one occasion, "poked him on the top of his lip, grabbed his arm, pulled him, lifted him off the ground and dropped him and threw him to the ground." The custody investigator stated: "It is of great concern that [Barnes] has been unable to control his temper with the children.... I do not see the behavior towards the [parties' children] as rising to the level of child abuse; however it is very inappropriate."

[¶ 13] The record also contains evidence of domestic violence between Jocelyn Boeckel and Barnes. According to the custody investigator's report:

Jocelyn stated that on Saturday morning, March 28, 2009, she and [Barnes] were still arguing. She was going to take her daughter somewhere and [Barnes] stated she would take his daughter against his dead body. Jocelyn reported that she had the baby in the car seat and [Barnes] was attempting to get the car seat away from her. In the process, [Barnes] held his forearms against her neck and body.... Jocelyn reported having one bruise on her left thumb and a scratch on her wrist.

Jocelyn Boeckel testified she obtained a restraining order against Barnes as a result of this incident, which was still in effect at the time of trial. In recommending the district court award physical custody to Darnell Boeckel, the custody investigator stated the "major factor" was "physical altercations between [Barnes] and the children and recently of Jocelyn."

[¶ 14] Thus, the evidence established a strong possibility that Barnes would re-

turn to Jocelyn Boeckel's Williston home. The evidence also established that, when Barnes previously resided in the home, there were numerous physical altercations between him and the parties' children, and he committed domestic violence against Jocelyn Barnes. Based upon this evidence, the district court was not clearly erroneous to find the best interests of the child factors favored Darnell Boeckel based in part upon the presence or potential presence of Barnes in Jocelyn Boeckel's Williston home.

### B.

[¶ 15] Jocelyn Boeckel also argues the district court erred in its application of factor (j) of the best interest of the child factors by failing to apply the rebuttable presumption against awarding custody to the perpetrator of domestic violence. Factor (j) provides:

> In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent.... As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01.

N.D.C.C. § 14–09–06.2(1)(j). "Domestic violence" is defined as:

> physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

N.D.C.C. § 14–07.1–01(2).

[¶ 16] "A determination whether the presumption under N.D.C.C. § 14–09–06.2(1)(j) is applicable is a finding of fact, which will not be reversed on appeal unless clearly erroneous." *Gietzen v. Gabel*, 2006 ND 153, ¶ 9, 718 N.W.2d 552. When addressing whether evidence of domestic violence triggers the presumption, the district court "must make specific and detailed findings regarding the effect the allegations of domestic violence have on the presumption." *Cox v. Cox*, 2000 ND 144, ¶ 17, 613 N.W.2d 516 (citing *Holtz v. Holtz*, 1999 ND 105, ¶ 27, 595 N.W.2d 1). The district court's findings should be sufficiently detailed to allow this Court to understand the basis for its decision. *P.A. v. A.H.O.*, 2008 ND 194, ¶ 10, 757 N.W.2d 58.

[¶ 17] The evidence established Darnell Boeckel committed domestic violence against Jocelyn Boeckel on multiple occasions. The custody investigator's 2006 report states:

> In November 2000 an incident occurred in which Jocelyn reported Darnell kicked her in the back and she fell to the floor. She reported feeling paralyzed and was unable to get up.... Jocelyn was on the floor and asked one of the kids to get the phone so she could contact a neighbor to come to help her. When the neighbor arrived, Jocelyn was still on the floor. The neighbor confirmed that she was contacted and came to the home to assist Jocelyn. Jocelyn

was on the floor and appeared in pain; [one of the parties' children] was lying with her. [The neighbor] got her a Tylenol and helped her get up.... Darnell recounts this incident somewhat differently. He reported grabbing her and she fell and hurt her tail bone.

The custody investigator's 2006 report also discusses another incident of domestic violence in April 2005 where a verbal confrontation between the parties turned physical:

[Darnell Boeckel] reported Jocelyn pushed against him with her chest and wouldn't leave. He put his arms around her and attempted to get her to leave the home. She lay down on the floor and he told her to leave or he would drag her out. She took a chair and hit him with it. He grabbed her ankle and pulled her out of the living room....

Jocelyn presented a similar historical summary; however with some additions.... Her view is a more violent accounting of events. Jocelyn reported that Darnell wanted her to leave the home and when she refused she was thrown across the room, grabbed by the hair and drug around, and her foot was twisted.

Following the April 2005 incident, the custody investigator's report stated Jocelyn Boeckel left the parties' home with two of their children and stayed at the Community Against Violence and Abuse shelter. The shelter staff took photographs of her injuries. The custody investigator reported she looked at the photos, "which revealed the following: a swollen eye, mark across the back of her neck, believed to be from Darnell holding her up from the front of her shirt, bruise on top of her foot with some skin abrasion and left shoulder burn believed to be a rug burn."

[¶ 18] Jocelyn Boeckel testified about a third incident of domestic violence that occurred after the parties had separated.

Jocelyn Boeckel stated she drove to Darnell Boeckel's farmstead after her parents died because she wanted to "look at the things my mom had made." When she asked Darnell Boeckel if she could enter the house, Jocelyn Boeckel testified "he shoved me out of the doorway and pushed me all the way back to my vehicle."

[¶ 19] With regard to factor (j), the district court found: "When Darnell and Jocelyn were still married and living together, Darnell perpetrated domestic violence against Jocelyn. She obtained at least two Protection Orders against Darnell. Darnell's domestic violence against Jocelyn occurred several years ago prior to the parties' divorce. [Factor (j)] favors Jocelyn." While the district court found Darnell Boeckel committed domestic violence, it did not apply the rebuttable presumption against awarding custody to the perpetrator of domestic violence. The district court did not make specific and detailed findings regarding the applicability of the presumption even though it found Darnell Boeckel committed domestic violence. Nor did the district court make findings from which we can discern the factual basis for the court's decision. *See Rothberg v. Rothberg*, 2006 ND 65, ¶ 14, 711 N.W.2d 219 ("Although findings of fact should be stated to afford a clear understanding of the court's decision, findings are adequate if this Court can discern from them the factual basis for the trial court's determination.").

[¶ 20] Without findings sufficiently explaining the district court's reason for not applying the rebuttable presumption against awarding custody to the perpetrator of domestic violence, we cannot adequately review its decision. For example, we cannot know whether the district court found Jocelyn Boeckel did not suffer "serious bodily injury" and there was no "pattern of domestic violence within a reason-

able time proximate to the proceeding," *see* N.D.C.C. § 14–09–06.2(1)(j), or whether the district court concluded Darnell Boeckel overcame the presumption through evidence regarding domestic violence in Jocelyn Boeckel's Williston home. Therefore, we reverse and remand the case to the district court with instructions to provide more detailed findings regarding factor (j) and the applicability of the presumption against awarding custody to the perpetrator of domestic violence. *See, e.g., Kasprowicz v. Kasprowicz,* 1998 ND 68, ¶¶ 12–13, 575 N.W.2d 921 (reversing and remanding a custody award because "[i]t is unclear from the Findings of Fact, Conclusions of Law and Order for Judgment what conclusion the district court reached regarding the domestic violence presumption").

## III.

[¶ 21] Jocelyn Boeckel argues the district court erred in its distribution of the parties' marital estate because the district court failed to include property Darnell Boeckel inherited from his mother, and the district court erred in its valuation of property she inherited from her parents.

## A.

[¶ 22] After Darnell Boeckel filed for divorce in 2005, but before the district court entered the divorce judgment in 2007, Jocelyn Boeckel's parents died in an automobile accident. Jocelyn Boeckel and her sister were the heirs to their parents' estate. The parties stipulated to the entry of divorce judgment, but reserved the issue of property division for a later time. The stipulation stated: "The Court will retain jurisdiction over issues of property and debt distribution, which have not been settled, and those matters will be decided in a further hearing." In conformity with the stipulation, the divorce judgment stat-

ed: "The equitable division of the marital estate and debts will be determined at a later date, and the Court reserves jurisdiction for that purpose." In October 2008, after Darnell Boeckel filed the motion to modify custody and distribute the parties' marital estate, his mother died. Darnell Boeckel was the sole heir to his mother's estate.

[¶ 23] The district court distributed the parties' marital estate in the amended divorce judgment. The district court included property Jocelyn Boeckel inherited from her parents in the marital estate, but not property Darnell Boeckel inherited from his mother. The district court stated:

Obviously, [Darnell Boeckel's mother] died after the parties were divorced. Darnell is the sole heir of her estate. Any property Darnell may inherit from his mother is after acquired property. [His mother's] estate or any other asset or debt acquired by the parties after their divorce is not part of the marital estate.

On appeal, Jocelyn Boeckel argues the district court erred by excluding Darnell Boeckel's inheritance from the marital estate because Darnell Boeckel stipulated to the district court determining the contents of the marital estate at a later date, and when the district court determined its contents, Darnell Boeckel had a vested interest in the inheritance.

[¶ 24] We hold the district court did not err by excluding Darnell Boeckel's inheritance from the parties' marital estate. The district court correctly excluded Darnell Boeckel's inheritance from the parties' marital estate as a matter of law because his mother died after the parties were divorced. "Assets accumulated after separation *but prior to the divorce* are included in the marital estate." *Lynnes v. Lynnes,* 2008 ND 71, ¶ 14, 747 N.W.2d 93

(emphasis added) (citing *Kautzman v. Kautzman*, 1998 ND 192, ¶ 10, 585 N.W.2d 561). The district court also correctly determined the parties did not stipulate to the inclusion of Darnell Boeckel's inheritance in the marital estate. The stipulation stated: "The Court will retain jurisdiction over issues of property and debt distribution, which have not been settled, and those matters will be decided in a further hearing." Similarly, the divorce judgment stated: "The equitable division of the marital estate and debts will be determined at a later date, and the Court reserves jurisdiction for that purpose." Thus, neither the stipulation nor the judgment support Jocelyn Boeckel's claim that Darnell Boeckel agreed to include property acquired after the divorce in the marital estate. Rather, both demonstrate the parties intended for the district court to perform the equitable division at a later date. Therefore, the district court correctly excluded Darnell Boeckel's inheritance from the parties' marital estate.

### B.

[¶ 25] Jocelyn Boeckel argues the district court erred in its valuation the parties' marital estate, specifically the property she inherited from her parents' estate. "In divorce proceedings, the district court's valuation of the marital estate is a finding of fact that will not be reversed unless it is clearly erroneous." *Isaacson v. Isaacson*, 2010 ND 18, ¶ 16, 777 N.W.2d 886. "Marital property valuations within the range of the evidence are not clearly erroneous." *Wald v. Wald*, 556 N.W.2d 291, 295 (N.D.1996) (citing *Hendrickson v. Hendrickson*, 553 N.W.2d 215, 219 (N.D. 1996)). "Ultimately, the district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses and to determine property values." *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 9, 714 N.W.2d 845.

[¶ 26] The parties presented the district court with documentary and testimonial evidence concerning the value of Jocelyn Boeckel's inheritance. Jocelyn Boeckel submitted a demonstrative exhibit listing the money and property she inherited from her parents' estate. The parties also filed a property and debt listing under N.D.R.Ct. 8.3. Jocelyn Boeckel listed the value of her inheritance at $395,880.18, while Darnell Boeckel listed its value at $598,229.96. The primary difference between the parties' valuations of Jocelyn Boeckel's inheritance concerned whether Jocelyn Boeckel inherited the specific amounts listed in her demonstrative exhibit, as Darnell Boeckel proposed, or whether she inherited one-half those amounts, as Jocelyn Boeckel proposed, because she only inherited one-half of her parents' estate. On cross examination, Jocelyn Boeckel acknowledged she inherited the amounts listed in the demonstrative exhibit, and several of her proposed valuations were therefore one-half the proper amount:

Q. As an example, number 155, the life insurance [from her parents' estate], you have $12,500.

A. Yes.

Q. And under attachment 5 of [the demonstrative exhibit] it shows the basic benefit is $50,000 and then the check was made payable to you for $25,000.

A. Okay. Yes, [my proposed valuations] were wrong.

Q. So that one, for example, should be $25,000.

A. With all the numbers being changed back and forth from your office to mine on my side, we didn't know which things—I guess I missed some on what you had changed versus what we had.

. . . .

Q. So if it is associated with [the demonstrative exhibit], that is the amount you received?

A. That is the amount I'll agree to.

Based upon this evidence, the district court valued Jocelyn Boeckel's inheritance at $460,258.72.

[¶ 27] However, Jocelyn Boeckel claims the district court's valuation is clearly erroneous because the evidence establishes she will actually inherit far less. Jocelyn Boeckel testified claims were filed against her parents' estate on behalf of two minors who were injured in the same automobile accident that killed her parents. Jocelyn Boeckel stated the minors have medical bills exceeding $800,000, as well as a Medicaid lien against the estate. Due to the claims against her parents' estate, Jocelyn Boeckel testified it is unclear what, if any, property she would actually inherit:

Q. [S]o at this point you don't know how much, if anything, you are going to get anything out of [your parents'] estate, under these circumstances?

A. Right.

[¶ 28] We hold the district court's finding that Jocelyn Boeckel would inherit $460,258.72 is not clearly erroneous because its valuation was within the range of the evidence. See Wald, 556 N.W.2d at 295. Also, while Jocelyn Boeckel's testimony establishes the possibility that her parents' estate would be reduced by the outstanding claims, the district court was in a better position to judge the credibility of Jocelyn Boeckel's testimony and determine property values. Kostelecky, 2006 ND 120, ¶ 9, 714 N.W.2d 845. We affirm the district court's valuation and distribution of the parties' marital estate.

## IV.

[¶ 29] Jocelyn Boeckel argues the district court erred by not awarding her at-

torney fees. The district court stated: "Each party will be responsible to pay their own attorney fees out of their individual assets. Those attorney fees will not be included as a marital debt." Jocelyn Boeckel testified Darnell Boeckel's lack of cooperation over visitation disputes caused her to incur substantial attorney fees and "since he caused the attorney fees, he should be responsible for paying them." Jocelyn Boeckel's previous attorney also testified a substantial portion of her fees were related to visitation disputes between the parties, and Darnell Boeckel acted unreasonably in settling the disputes. Thus, Jocelyn Boeckel claims the district court should have ordered Darnell Boeckel to pay her attorney fees.

[¶ 30] In a divorce action, a district court may award attorney fees "as may be necessary." N.D.C.C. § 14–05–23. A district court's decision whether to award attorney fees is within the district court's discretion and will not be reversed absent an abuse of discretion. Eberle v. Eberle, 2009 ND 107, ¶ 39, 766 N.W.2d 477. "A district court abuses its discretion if it misinterprets or misapplies the law." Christian v. Christian, 2007 ND 196, ¶ 16, 742 N.W.2d 819. Jocelyn Boeckel presented no evidence establishing how the district court misinterpreted or misapplied the law by refusing to award her attorney fees. We affirm the district court's decision.

## V.

[¶ 31] We affirm the district court's valuation and distribution of the parties' marital estate and its refusal to award attorney fees to Jocelyn Boeckel. We reverse and remand the case for further findings regarding the applicability of the rebuttable presumption against awarding custody to the perpetrator of domestic abuse.

[¶ 32] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 33] I believe the reasonable interpretation of the district court's findings is that there was domestic violence but it did not rise to the level of the presumption. I have no objection to sending this back for the district court to make its findings explicit, provided we consistently apply this standard in the future.

[¶ 34] DALE V. SANDSTROM

**STATE of North Dakota, Plaintiff and Appellee**

**Joshua John POITRA, Defendant and Appellant.**