2011 ND 132

**Dominique L. SMITH, Plaintiff
and Appellant**

v.

**Angie Abigail MARTINEZ, Defendant
and Appellee.**

**No. 20100309.**

Supreme Court of North Dakota.

July 13, 2011.

Theodore T. Sandberg (argued), Grand Forks, ND, for plaintiff and appellant.

Bethany L. Dittus (argued), Grand Forks, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Dominique L. Smith appeals a district court judgment granting Angie Abigail Martinez primary residential responsibility of the parties' child, C.R.S. We conclude the district court made inadequate findings on domestic violence between the parties and the presumption against awarding primary residential responsibility to the perpetrator of domestic violence. We reverse and remand to the district court to make the necessary findings.

I

[¶ 2] Smith and Martinez have never been married to each other. They have one child, C.R.S., born in 2009. Shortly after C.R.S. was born, Martinez left North Dakota and moved to Texas. Smith initiated an action seeking primary residential responsibility of C.R.S. At the district court hearing, both parties alleged the other perpetrated incidents of domestic violence. Smith alleged Martinez had been violent, had a felony record, was unemployed, and had a "serious psychological history." Martinez alleged Smith caused the problems she had, and she has improved since leaving Smith. In its analysis of the factors to determine the best interests of the child, the district court included some findings on domestic violence between the parties, but the court did not address the domestic violence presumption. The court awarded Martinez primary residential responsibility with parenting time for Smith. Smith appealed, arguing the court erred by not analyzing whether the domestic violence presumption applied, and he argued the court erred in its findings on several other factors under the best interests of the child analysis.

II

[¶ 3] This Court reviews an award of primary residential responsibility under the clearly erroneous standard of review. *Boeckel v. Boeckel*, 2010 ND 130, ¶ 9, 785 N.W.2d 213. This Court does not reweigh the evidence or reassess the credibility of witnesses, nor does this Court substitute its judgment for a district court's initial decision. *Id.* A district court's decision awarding primary residential responsibility is a finding of fact which will not be set aside on appeal unless it is induced by an erroneous view of the law, if no evidence exists to support it, or if on the entire record this Court is left with a definite and firm conviction a mistake has been made. *Duff v. Kearns–Duff*, 2010 ND 247, ¶ 5, 792 N.W.2d 916. A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.* A district court shall consider the best interests of the child in awarding primary residential responsibility, and the court must consider all the relevant factors under N.D.C.C. § 14–09–06.2(1). *Id.* at ¶ 6.

[¶ 4] On appeal, Smith argued the district court erred in applying factors (d), (e), (f), (g), and (j) of N.D.C.C. § 14–09–06.2(1) in its analysis of the best interests of the child. Smith argued the district court erred by not applying the domestic violence presumption under factor (j). Smith did not contest the court's findings under factors (a), (b), (c), (h), (i), (k), (*l*), or (m).

A

[¶ 5] Smith argued the district court erred in its findings under factor (d), because the findings did "not comport with any evidence."

[¶ 6] Under factor (d), a court may consider: "The sufficiency and stability of each parent's home environment, the im-

pact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community." N.D.C.C. § 14–09–06.2(1)(d). The district court found Martinez had a stable home environment now that she was away from Smith, Martinez's family assisted in financial and emotional care of C.R.S., and Martinez was employed and had no plans to leave her current community. The district court found Smith's plans were unknown, he had no extended family in his community, and he had not spent as much time with C.R.S.

[¶ 7] Smith argued the testimony of a child protective services specialist from Texas, and the testimony of Martinez's probation officer in Texas, did not support the district court's findings on Martinez's home environment. The child protective services specialist testified she checked on Martinez three times a month, monitored C.R.S.'s well-being, C.R.S. appeared to be well cared for, and C.R.S.'s living environment was nice. She had no concerns about Martinez's living environment. The probation officer testified she had no concerns with Martinez's probationary status in Texas, nor was she concerned Martinez was using drugs. Martinez testified she planned to stay in her current community, she received emotional support and assistance from her mother, and her sister assisted her financially. Martinez testified about her employment. The district court's findings on Martinez's home environment were supported by the record.

[¶ 8] Smith argued the district court erred in not considering the recordings of his telephone conversations with Martinez as evidence of her negative home life. Martinez testified she was distressed during the telephone conversations because of the court proceedings and Smith's communications with her. She testified Smith made threatening telephone calls, and he presented the portions of the conversation where she was reacting to his threatening communications. Martinez testified she was stressed as a new mother, and she was stressed that Smith discovered her addresses in her new community. Martinez explained why she said the things she said during the recorded conversations. The district court was entitled to choose between two permissible views of the evidence, and there is evidence on the record to support the court's findings and decision.

## B

[¶ 9] Smith argued the district court erred in considering factor (e), because Martinez demonstrated she was unwilling to allow Smith any parenting time with C.R.S., and the court's findings were not supported by any evidence.

[¶ 10] Under factor (e), the court may consider: "The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14–09–06.2(1)(e). The district court found Martinez had removed C.R.S. from North Dakota and allowed Smith only limited contact, but Martinez expressed a willingness to allow Smith parenting time and demonstrated she felt it important Smith have a relationship with C.R.S. The court noted Smith sought limited parenting time for Martinez. Smith argues the evidence showed Martinez was unwilling to foster a relationship between Smith and C.R.S., and Martinez threatened harm to herself and C.R.S. rather than allow Smith parenting time.

[¶ 11] Martinez testified that she removed C.R.S. from North Dakota to protect her, not to keep her away from Smith. Martinez testified she would encourage parenting time and believed it important

for Smith to have a relationship with C.R.S. because he is C.R.S.'s father. Martinez scheduled a visit for Smith when she was in North Dakota before trial. Martinez testified that her threatening language was in response to the stress of the upcoming trial and Smith's communications with her. Martinez said her past lack of cooperation on parenting time was a reaction to Smith's conduct. The record supports the district court's findings.

### C

[¶ 12] Smith argued the district court erred in its findings on factor (f), because there was no evidence Martinez acknowledged her criminal history, and the court ignored her criminal history in its findings.

[¶ 13] Under factor (f), the court may consider: "The moral fitness of the parents, as that fitness impacts the child." N.D.C.C. § 14–09–06.2(1)(f). The district court found both parties had criminal records, Martinez recognized her past mistakes and was doing well on supervised probation, and there was no showing that either parties' criminal history impacted C.R.S. An officer with the Grand Forks police department testified about some of Smith's criminal record. Martinez's probation officer testified about her criminal history and stated none of Martinez's crimes had been significant enough to revoke her probation. According to the probation officer, Martinez has not had serious criminal issues, and her drug tests have all been negative. The probation officer said there were no concerns for C.R.S. regarding Martinez's criminal history, because everything happened before the baby was born. The district court was correct that there was no evidence on the record that the parties' past criminal activities had any effect on C.R.S.

### D

[¶ 14] Smith argued the district court erred in its findings on factor (g), because the weight of the evidence shows Martinez was a seriously mentally ill woman, which the district court ignored.

[¶ 15] Under factor (g), the court may consider: "The mental and physical health of the parents, as that health impacts the child." N.D.C.C. § 14–09–06.2(1)(g). The district court found Martinez has mental health issues and received treatment for those issues. The court noted none of the mental health professionals were concerned that Martinez was a threat to herself or her child. Martinez acknowledged some of Smith's allegations and explained how her mental health issues were the result of her relationship with Smith. Martinez countered some of Smith's allegations by testifying on her version of the events and explaining why Smith was wrong. The district court took judicial notice of Martinez's records for inpatient treatment during a civil commitment, and the records show she was released because she was not a threat to others, and mental health professionals required no further treatment. There is evidence on the record to support the district court's findings, and we will not reweigh the evidence on appeal.

### E

[¶ 16] Smith argued the district court erred in its findings on factor (j), because the evidence proved Martinez was the instigator of domestic violence, and the district court erred by not applying the domestic violence presumption.

[¶ 17] The court considers evidence of domestic violence under factor (j):

In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that do-

mestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence.... The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent residential responsibility. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.

N.D.C.C. § 14-09-06.2(1)(j). Domestic violence "includes physical harm, bodily injury, sexual activity compelled by physical force, assault, not committed in self-defense, on the complaining family or household members." N.D.C.C. § 14-07.1-01(2).

[¶ 18] Smith argued the district court erred by not applying the domestic violence presumption and by not mentioning the presumption at all. "A determination whether the presumption under N.D.C.C. § 14-09-06.2(1)(j) is applicable is a finding of fact, which will not be reversed on appeal unless clearly erroneous." *Boeckel,* 2010 ND 130, ¶ 16, 785 N.W.2d 213 (quoting *Gietzen v. Gabel,* 2006 ND 153, ¶ 9, 718 N.W.2d 552). "When addressing whether evidence of domestic violence triggers the presumption, the district court 'must make specific and detailed findings regarding the effect the allegations of domestic violence have on the presumption.'" *Id.* (quoting *Cox v. Cox,* 2000 ND 144, ¶ 17, 613 N.W.2d 516). "The district court's findings should be sufficiently detailed to allow this Court to understand the basis for its decision." *Id.* (citing *P.A. v. A.H.O.,* 2008 ND 194, ¶ 10, 757 N.W.2d 58). "Without findings sufficiently explaining the district court's reason for not applying the rebuttable presumption against awarding custody to the perpetrator of domestic violence, we cannot adequately review its decision." *Id.* at ¶ 20.

[¶ 19] The parties alleged that the other had perpetrated and committed acts of domestic violence. In the spring of 2009, police responded to an incident involving a wrench. Smith claimed Martinez brought the wrench into his bedroom and tried to hit him with it. Martinez testified the wrench was already in Smith's room, and she picked it up after he had thrown her on the bed. Martinez testified Smith slammed her head into the bedroom wall and made a large hole. An incident occurred in May 2009, where Smith alleged Martinez drove to his place of employment, bit him on the arm, and split his lip with an ice scraper. Martinez testified Smith had been choking her, and she bit him in self-defense. Martinez was charged with, and pleaded guilty to, simple assault as the result of this incident. A friend of Martinez's testified she witnessed Smith slam Martinez's head into a steering wheel, picked Martinez up several times after alleged incidents of domestic violence, and saw bruises on Martinez after alleged incidents of domestic violence. Martinez testified Smith threw her out of a hotel room when she was seven months

pregnant, causing her to land on her foot in a way that fractured her foot. Smith testified Martinez broke her foot while climbing through a hotel window. In November 2009, Martinez reported to police that Smith hit her in the head so hard that her ears bled, and she went to the hospital. Martinez testified Smith tried to choke her and pushed her into cupboards over Thanksgiving weekend in 2009, while Smith was holding C.R.S. Police responded to an alleged domestic disturbance in late 2009, where Martinez told officers Smith had thrown her on the bed, tried to choke her, and kicked her in the back. A police officer testified about text messages from Martinez, forwarded to the officer by Martinez's sister, about alleged instances of domestic violence by Smith. Martinez's witnesses—a friend, police officers, probation officers, and social workers—testified they believed Martinez's allegations of domestic violence by Smith, and they had also been intimidated by Smith or witnessed intimidating and controlling behavior. Smith's witnesses testified he was calm and gentle, and Martinez was the perpetrator of domestic violence.

[¶ 20]   The district court found:

There has been a record of domestic violence in this case. [Martinez] was charged with and pleaded guilty to simple assault on [Smith]. However, it appears that this was [Martinez's] reaction to being the victim of ongoing domestic violence. Even though [Martinez] was emotionally unstable at times, this was no excuse for [Smith] to treat her badly. This domestic violence included derogatory comments and insults. It includes being ordered to sleep on the floor. It includes being told she was not worthy to have her boyfriend attend her graduation. It includes being convinced she was crazy. It includes being told she was not worthy to raise their child. [Smith] also intimidated [Martinez]. On several occasions he displayed a gun to

her. [Martinez] was so scared of [Smith], she peed her pants. [Martinez] communicated this domestic violence to her probation officer, Twyla Llewellyn, and to her friend Lorizza Davila. [Martinez] demonstrated classic signs of a domestic violence victim.

[¶ 21]   There was evidence of domestic violence on the record, perpetrated by each of the parties, but it is unclear what conclusion the district court reached on the domestic violence presumption. The district court's findings on domestic violence, the credibility it assigns to each party's assertions against the other, and whether the domestic violence presumption applies, are insufficient. Therefore, we reverse and remand to the district court with instructions to provide more detailed findings for factor (j) and the applicability of presumption against awarding primary residential responsibility to the perpetrator of domestic violence.

### III

[¶ 22]   We reverse and remand the case to the district court with instructions to provide sufficient findings on factor (j) and whether the presumption against awarding primary residential responsibility to the perpetrator of domestic violence applies under the circumstances of this case.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 24]   Angie Martinez physically assaulted Dominique Smith. She was criminally charged and pled guilty to criminal assault.

[¶ 25]   Perhaps it is just poor choice of words, but I am concerned that the district court opinion labels "derogatory comments and insults" as "domestic violence" and seems to suggest that they can justify

physical violence. *See* Majority Opinion, at ¶ 20. Such "button pushing" has been universally condemned by this Court as not justifying physical violence. *See, e.g., Anderson v. Hensrud,* 548 N.W.2d 410 (N.D.1996); *Engh v. Jensen,* 547 N.W.2d 922 (N.D.1996); *Heck v. Reed,* 529 N.W.2d 155 (N.D.1995).

[¶ 26] "As used in this subdivision [j], 'domestic violence' means domestic violence as defined in section 14–07.1–01." N.D.C.C. § 14–09–06.2(1)(j). And N.D.C.C. § 14–07.1–01(2) provides:

"Domestic violence" includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

[¶ 27] The district court will have the opportunity to apply this law on remand.

[¶ 28] DALE V. SANDSTROM